Candace Waggoner WOODS, Appellant,

v.

The STATE of Texas.

No. 1574–96.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 5, 1997.

Keith S. Hampton, Cynthia L. Hampton, Austin, for appellant.

Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

PRICE, Judge.

Appellant was indicted for carrying a firearm in court. TEX. PEN.CODE ANN. § 46.03(a)(3) (Vernon Supp.1996). After her pretrial motion to suppress was overruled, she pleaded guilty to the lesser included offense of unlawfully carrying a weapon. TEX. PEN.CODE ANN. § 46.02(a) (Vernon 1994). The district court found appellant guilty and, pursuant to a plea bargain, assessed punishment at one year confinement, then suspended imposition of the sentence and placed appellant on one year community supervision.

The Austin Court of Appeals held that the detention and search of appellant in this cause were not shown to be justified by the need for courthouse security or by a reasonable suspicion of criminality and, therefore, it was error for the trial court to deny the appellant's motion to suppress. *Woods v. State,* 933 S.W.2d 719, (Tex.App.—Austin 1996). We granted the State's petition for discretionary review to determine whether the construct of "as consistent with innocent activity as with criminal activity" has any

continuing utility in an analysis of reasonable suspicion.

# I.

## Factual Background

A brief recitation of the facts may be helpful to understand the context of appellant's arrest. Appellant entered the Travis County Courthouse through the main entrance, passing a sign that informed those entering that all persons and baggage are subject to a search. After entering, appellant saw a metal detector and x-ray machine operated by Kevin McCullen, a private security guard employed by the Travis County Sheriff's department. McCullen testified that appellant "looked very surprised and scared when she saw the machines." She turned toward a door to the left which went to a justice of the peace courtroom. This courtroom door also bore a sign advising that all persons must be screened before entering. Appellant then turned around and started to go back out the main entrance.

McCullen stopped appellant before she could leave the building and asked if he could help her. She told McCullen she was trying to get to the fifth floor. McCullen stated that appellant "seemed very nervous" after he told her she had to pass through the metal detectors to reach the elevators. She told him that she first had to go back to her car and she started outside. McCullen told appellant she could not leave the building without first running her purse through the x-ray machine. Appellant ignored McCullen's instruction and left the courthouse. McCullen followed and stopped appellant outside, again telling her she needed to have her purse checked through the machine. McCullen was joined by Deputy Sheriff Billy Richardson. Appellant agreed to reenter the courthouse with the officers, telling them that her purse was going to set off the metal detector. When appellant's purse was put through the x-ray machine, the officer saw the image of a pistol. Richardson opened appellant's purse and discovered a loaded pistol.

# II.

## The Court of Appeals' Decision

The Austin Court of Appeals held that appellant's behavior did not give rise to reasonable suspicion. In so holding, the court recited the standard for reasonable suspicion: to justify a temporary detention, a police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court also stated that when the facts are as consistent with innocent activity as with criminal activity, a detention based on those facts is unlawful. The court cited our decisions in *Montano v. State,* 843 S.W.2d 579 (Tex.Crim.App.1992), and *Crockett v. State,* 803 S.W.2d 308 (Tex.Crim.App. 1991), and concluded that nothing in appellant's words or conduct "clearly set her apart from persons engaged in innocent activity." Thus, the court held that the trial court abused its discretion in finding there was reasonable suspicion to detain appellant.

# III.

## Arguments of the Parties

The State argues that the notion that reasonable suspicion can never be established by conduct which is "as consistent with innocent activity as with criminal activity" has been specifically rejected by the United States Supreme Court in *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (individual factors when taken by themselves were consistent with innocent travel, but when taken together they amounted to reasonable suspicion) and by this court in *Holladay v. State,* 805 S.W.2d 464 (Tex.Crim.App.1991 ) (the test for reasonable suspicion is not whether conduct is innocent or guilty, but rather, the degree of suspicion that attaches to noncriminal acts). However, the State contends that this Court and many intermediate appellate courts persist in applying this abandoned concept. It is the State's position that when a court concludes that no reasonable suspicion is shown because a suspect's behavior is "as consistent with innocent activity as with

criminal activity," the court is essentially requiring a showing of "proof of wrongdoing by a preponderance of the evidence." This standard, according to the State, has also been specifically rejected by the Supreme Court and this Court.[1]

Appellant, in her reply brief, characterizes the State's position as an "algebraic analysis." She argues that the "as consistent with innocent activity" construct is not a mathematical balancing test used to calculate degrees of suspicion. Instead, it is merely another way of expressing why the seizure of a person based on facts which raise no articulable nexus to criminal activity is unreasonable under the Fourth Amendment. Appellant relies on this Court's decision in *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991), and asserts that there is no arithmetical equation of "guilty" and "innocent" behavior under the reasonable suspicion analysis; rather, *Crockett* requires that the reviewing court uncover the criminality of otherwise innocent conduct, and if the behavior which the officer considered criminal cannot be objectively distinguished from innocent behavior, a seizure of any sort is unreasonable. Stated another way, the analysis is not a measure of suspicion, but a method by which the absence of such a connection between facts and their criminal nature is highlighted. Appellant insists that such a connection must exist before a stop, detention, or arrest can be said to be reasonable under the Fourth Amendment. Otherwise, seizures could be justified based on wholly innocent activity and all Fourth Amendment protections would evaporate.

## IV.

### Analysis

The Fourth Amendment bridles the government's power to invade a person's privacy by requiring that searches and seizures customarily be supported by a showing of probable cause. The lower standard of reasonable suspicion is derived from the probable cause standard and applies only to those brief detentions which fall short of being fullscale searches and seizures. The Supreme Court established this standard in response to the time-honored police practice of "stop and frisk." 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.1(a), at 334 (2d ed.1987). This type of practice was deemed a necessary tool that would aid law enforcement in preventing imminent crimes and stopping ongoing crimes, as well as lending protection to officers and others in potentially threatening situations. *See Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. In the landmark decision of *Terry v. Ohio*, the United States Supreme Court held that a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *Id.* at 29, 88 S.Ct. at 1884. The *Terry* court recognized the precarious balance between a citizen's right to privacy and law enforcement's personal safety interests. *Id.* at 21, 88 S.Ct. at 1879. To discourage police harassment carried out indiscriminately based on social stereotypes, race, gender or other irrelevant personal characteristics, the Court explained that the officer must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention. *Id.* at 21, 88 S.Ct. at 1880. The Court emphasized that "these facts must amount to something more than an inchoate and unparticularized suspicion or hunch." *Id.* The Court in *Terry*, however, did not elaborate further on what specific types of conduct should be deemed suspicious enough to warrant police intrusion.

The "as consistent with innocent activity as with criminal activity" construct employed by the court of appeals in this case, and criticized by the State in its petition, first surfaced in Texas jurisprudence in *Armstrong v. State*, 550 S.W.2d 25 (Tex.Crim.App.1976). In *Armstrong*, a police officer stopped appellant's automobile. The officer testified that he stopped the car because "he had received information about ten days before of such a vehicle being wanted for the investigation of a burglary." *Id.* at 26. The driver of the car was arrested for outstanding warrants. A subsequent search of the trunk revealed sto-

---

1. *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585;      *Holladay*, 805 S.W.2d at 469.

len goods. On appeal from the denial of Armstrong's motion to suppress, we determined that the admission of the items in the trunk was error because the officer lacked reasonable suspicion to detain Armstrong and therefore the subsequent search was illegal. At the time of the stop, there was no traffic violation. The officer did not observe any other offense being committed, nor was there any evidence of suspicious criminal activity afoot. In our attempt to determine whether the officer had reasonable suspicion, we struggled to articulate a coherent test.[2] We settled on the test established by the California Supreme Court in *Irwin v. Superior Court of Los Angeles County,* 1 Cal.3d 423, 82 Cal.Rptr. 484, 485–86, 462 P.2d 12, 14 (1969): "where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." We held that the stop of Armstrong was improper because there was no suggestion of criminality in Armstrong's activity. After *Armstrong,* the "as consistent

with innocent activity" construct began appearing in cases from this Court and the courts of appeals.[3] However, its meaning varied from case to case. A significant problem with the construct has been the ambiguity of the word "activity." Some courts have used the word interchangeably with terms like "conduct" and "behavior" and thus have limited its definition to the actions of the defendant.[4] Other courts have taken a broader view of "activity" and allowed the word to additionally include the "circumstances" of the situation and the "events" causing the officer's suspicion.[5] Given this ambiguity, attempts to properly apply the construct have proven difficult, and as a result, this Court has moved away from its use.[6]

In recent years, numerous courts throughout the country have also rejected this construct. Some states have done so through case law,[7] while other states have simply codified the holding in *Terry.*[8] Furthermore,

---

**2.** The original opinion in *Armstrong* settled the detention question in accordance with the holding in *U.S. v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), which adhered to the holding in *Terry.* But, the legality of Armstrong's detention was reexamined at the State's behest on motion for rehearing.

**3.** *See Montano v. State,* 843 S.W.2d 579 (Tex. Crim.App.1992); *Daniels v. State,* 718 S.W.2d 702 (Tex.Crim.App.1986), *overruled on other grounds,* 758 S.W.2d 772, *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986); *Gearing v. State,* 685 S.W.2d 326 (Tex.Crim.App. 1985); *Johnson v. State,* 658 S.W.2d 623 (Tex. Crim.App.1983); *Schwartz v. State,* 635 S.W.2d 545 (Tex.Crim.App.1982); *Sanchez v. State,* 931 S.W.2d 331 (Tex.App.—San Antonio 1996, pet. ref'd); *Giossi v. State,* 831 S.W.2d 887 (Tex. App.—Austin 1992, pet. ref'd); *State v. Gilliam,* 832 S.W.2d 119 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Ramos Meza v. State,* 736 S.W.2d 221 (Tex.App.—Corpus Christi 1987, no pet.); *James v. State,* 629 S.W.2d 92 (Tex.App.—Dallas 1981, pet. ref'd), *cert. denied,* 459 U.S. 987, 103 S.Ct. 340, 74 L.Ed.2d 382 (1982 ).

**4.** *Compare Schwartz v. State,* 635 S.W.2d 545 (Tex.Crim.App.1982); *State v. Shamsie,* 940 S.W.2d 223 (Tex.App.—Austin 1997, no pet.); *Pickens v. State,* 712 S.W.2d 560 (Tex.App.— Houston [1st Dist.] 1986, no pet.); *with Montano v. State,* 843 S.W.2d 579 (Tex.Crim.App.1992); *Gearing v. State,* 685 S.W.2d 326 (Tex.Crim.App. 1985); *Sanchez v, State,* 931 S.W.2d 331 (Tex. App.—San Antonio 1996, pet. ref'd); *Giossi v.*

*State,* 831 S.W.2d 887 (Tex.App.—Austin 1992, pet. ref'd).

**5.** *Compare Pickens v. State,* 712 S.W.2d 560 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd.); *Conner v. State,* 712 S.W.2d 259 (Tex.App.—Austin 1986, pet. ref'd); *with James v. State,* 629 S.W.2d 92 (Tex.App.—Dallas 1981, pet. ref'd ) *cert. denied,* 459 U.S. 987, 103 S.Ct. 340, 74 L.Ed.2d 382 (1982).

**6.** *See Davis v. State,* 947 S.W.2d 240 (Tex.Crim. App.1997); *Gurrola v. State,* 877 S.W.2d 300 (Tex.Crim.App.1994); *Holladay v. State,* 805 S.W.2d 464 (Tex.Crim.App.1991).

**7.** *See State v. Combs,* 398 N.W.2d 563, 565 (Minn.1987); *State v. Bridge,* 234 Neb. 781, 452 N.W.2d 542, 545 (1990); *People v. Benjamin,* 51 N.Y.2d 267, 434 N.Y.S.2d 144, 146–47, 414 N.E.2d 645, 648 (1980); *State v. Waldner,* 206 Wis.2d 51, 556 N.W.2d 681, 684 (1996).

**8.** *See, e.g.,* N.D. Cent.Code § 29–29–21 (1991):

A peace officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed, or is about to commit:
1. Any felony
2. A misdemeanor relating to the possession of a concealed or dangerous weapon

3. Burglary or unlawful entry.
4. A violation of any [controlled substances] provision....

the California court which initially created the construct subsequently repudiated it and explained:

> Reconsidering the matter, we are of the view that the *Irwin* dictum cannot be squared with the rule that a reasonable suspicion of involvement in criminal activity will justify a temporary stop or detention. Under that standard, if circumstances are "consistent with criminal activity," they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances "in the proper discharge of the officer's duties." No reason appears for a contrary result simply because the circumstances are also "consistent with lawful activity," as may often be the case. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." The citizen's undoubted interest in freedom from abuse of this procedure is protected—so far as it is in the law's power to do so—by the correlative rule that no stop or detention is permissible when the circumstances are not reasonably "consistent with criminal activity" and the investigation is therefore based on mere curiosity, rumor or hunch. Because the *Irwin* dictum is thus in conflict with the settled standards for dealing with this sensitive problem, it is disapproved. (emphasis added) (citations omitted).

*In re Tony C.*, 21 Cal.3d 888, 148 Cal.Rptr. 366, 369–70, 582 P.2d 957, 960–61 (1978).

UTAH CODE ANN. § 77-7-15 (1988 & Supp.1997): A peace officer may stop any person in a public place when he has reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.
*See also*, WIS. STAT. § 968.24 (1994).

The rationale of the *Tony* court, coupled with similar trends in other jurisdictions,[9] as well as a noted absence of the "as consistent with innocent activity" analysis in recent cases from this Court, lends credence to the State's argument that the "as consistent with innocent activity" test may no longer be viable.

Even more compelling are the fairly recent discussions of this test by the United States Supreme Court in *U.S. v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), and *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). *Cortez* involved a border patrol agent's stop of the defendants' vehicle near a suspected illegal alien pickup point. *Cortez*, 449 U.S. at 412, 101 S.Ct. at 692. The Court faced the task of determining whether or not the conduct of the defendants gave rise to reasonable suspicion as to warrant a brief detention by the agent. In its endeavors, the Court observed that "an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Id.* at 417, 101 S.Ct. at 695. It recognized the struggles of lower courts in their attempts to illustrate precisely what type of conduct is sufficient to authorize police to stop a person. Chief Justice Burger, writing for the majority, pointed out that "terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise." *Id.* In his effort to reach a workable solution, he borrowed from the rationales of the Court's earlier opinions discussing the requisites of reasonable suspicion in the context of border patrols to settle on the notion that the "totality of the circumstances—the whole picture—must be taken into account." *Id.* at 418, 101 S.Ct. at 695. He also acknowledged that "when used by trained law enforcement officers, objective facts, meaningless to the

9. *See, e.g., United States v. Trullo*, 809 F.2d 108, 112 (1st Cir.1987); *United States v. Gomez*, 776 F.2d 542, 548 (5th Cir.1985); *United States v. Ilazi*, 730 F.2d 1120, 1125 (8th Cir.1984); *United States v. Black*, 675 F.2d 129, 137 (7th Cir.1982); *U.S. v. Forero–Rincon*, 626 F.2d 218, 222 (2d Cir.1980); *United States v. Holland*, 510 F.2d 453, 455 (9th Cir.1975).

untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person. . . ." *Id.*

In *Sokolow,* the Supreme Court revisited the analysis it had touched on in *Cortez.* 490 U.S. at 7, 109 S.Ct. at 1585. Chief Justice Rehnquist authored the majority opinion. He explained that the concept of reasonable suspicion, like probable cause, cannot be reduced to "a neat set of legal rules." He noted that when a detention is based upon conduct by the suspect, it is clear that conduct need not itself be unlawful or in some sense inconsistent with innocence. Justice Rehnquist observed that innocent behavior will frequently provide the basis for a showing of probable cause, and in making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts. *Id.* at 10, 109 S.Ct. at 1587. According to Justice Rehnquist, that principle applies equally as well to the reasonable suspicion inquiry. *Id.* In support of this analysis, the Chief Justice reasserted the rationale of *Cortez:*

> In evaluating the validity of a stop such as this, we must consider—the totality of the circumstances—the whole picture. The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers.

*Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585–86.

We find the cases of *Cortez* and *Sokolow* well reasoned and persuasive. We recognize that there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion.

As noted in *Sokolow,* the facts of *Terry* well illustrate this point. *Sokolow,* 490 U.S. at 11, 109 S.Ct. at 1587. In *Terry,* the officer observed two men standing about three hundred feet away from him. *Terry,* 392 U.S. at 6, 88 S.Ct. at 1872. One of the men left the other one and walked south past some stores. He paused for a moment and looked in a store window, then walked on a short distance, turned around and walked back toward the corner, pausing once again to look in the same store window. He rejoined his companion at the corner, and the two conferred briefly. The second man went through the same series of motions. As described, there is nothing illegal about the conduct of these two men. Window shopping is neither a crime, nor is it ordinarily suspicious behavior. But, this particular activity was repeated by the two men approximately one dozen times over a twelve minute period. Also, at one point, while the two men were standing together on the corner, a third man approached them and engaged them briefly in conversation. After the third man left, the two resumed their pacing and peering. *Id.* These facts, viewed in light of the officer's thirty years of experience patrolling an area often the victim of shoplifters and pickpockets, gave rise to enough suspicion to justify a detention. Yet, under the "as consistent with innocent activity" construct, the detention might not have withstood constitutional scrutiny.

## V.

### Conclusion

Today we follow the guidance of the Supreme Court in *Cortez* and *Sokolow* and hold that the "as consistent with innocent activity as with criminal activity" construct is no longer a viable test for determining reasonable suspicion. The cases cited in footnotes three, four and five and any other cases holding to the contrary are expressly overruled. We hold that the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. The Court of Appeals erred in applying the as "consistent with innocent activity as with criminal activi-

ty" construct to a determination of reasonable suspicion.

Therefore, this cause is reversed and remanded to the Court of Appeals for proceedings consistent with this opinion.

OVERSTREET, Judge, dissenting.

I dissent to the overruling of the use of the "as consistent with innocent activity" construct in determining reasonable suspicion. The majority's decision to abolish that factor effectively does away with the concept of reasonable suspicion being necessary for a *Terry* stop detention.

The majority's holding means that innocent activity justifies a *Terry* stop detention because innocent activity could provide reasonable suspicion for criminal activity. A person can innocently walk down the street, yet such innocent walking could in actuality be criminal activity, e.g. the person could be walking away from a crime; thus the majority's position is that such innocent walking provides reasonable suspicion to justify a *Terry* stop detention. Therefore, anyone innocently walking down the street is subject to being stopped, detained and questioned because such innocent activity may in fact be criminal and the majority believes that such provides reasonable suspicion that criminal activity may be afoot. But is it really "reasonable" to believe that criminal activity is afoot when someone is simply engaged in innocent activity? I disagree.

Because the majority holding eviscerates the time-honored constitutional standard for determining reasonable suspicion, and effectively provides that any activity, even innocent activity, provides reasonable suspicion, I dissent.