TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00688-CV






Thad Frensley Smith, Appellant



v.



Texas Department of Public Safety, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 242,354, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING 







 Appellant Thad Frensley Smith's driver's license was automatically suspended
following his failure to pass an intoxilyzer test after his arrest for driving while intoxicated. See
Tex. Transp. Code Ann. §§ 524.011(a), (b); 524.012 (West 1999) (Transp. Code). A contested
case hearing at the State Office of Administrative Hearings resulted in an order suspending his
license for sixty days. See Transp. Code § 524.031. Smith now appeals the final judgment of the
county court at law that affirmed the administrative order. We will affirm the judgment of the
county court at law.


Background



 On June 19, 1998, at approximately 3:15 a.m., Sergeant Bryan Whoolery of the
Travis County Sheriff's Department was approaching the intersection of RM 2222 and Mount
Bonnell Road. He noticed a late-model Porsche with collision damage to the left side stopped at
the intersection. (1) A man and a woman were standing beside the driver's side of the vehicle
looking at the damage. As he drove by the intersection, he observed the man throwing his arms
around, stamping his feet, and generally appearing agitated. Fearing a disturbance was about to
happen, he turned around to return to the intersection. As he returned, he saw the two people
hurriedly enter the vehicle and attempt to drive away. He stopped the vehicle, smelled burning
rubber, and noticed that the vehicle's left rear quarter panel also had collision damage to the
degree that it was rubbing against the left tire. The Porsche's driver identified himself as Thad
Smith.

 On noticing a strong odor of alcohol coming from the interior of the Porsche, 
Whoolery requested that Smith get out of the vehicle and explain his earlier actions and the
damage to his car. Whoolery detected a moderate odor of alcoholic beverage on Smith's breath. 
Smith said that the woman accompanying him had become sick from drinking too much and he
had stopped the car to allow her to vomit. He said the car had been in an accident the day before;
he had not just been in a collision. He told Whoolery that he had consumed five alcoholic
beverages since 10:00 p.m. Whoolery asked Smith to perform several field sobriety tests on
which Smith did poorly. At this point, Whoolery arrested Smith for driving while intoxicated and
arrested his passenger for public intoxication. Smith agreed to submit a breath specimen and
registered measurements of .113 and .111. The driver's license suspension and ultimately, this
appeal, followed.

 In two issues on appeal to this Court, Smith contends that the administrative law
judge ("ALJ") erred in admitting evidence at the hearing which the Texas Department of Public
Safety ( "Department") had not produced within five days of receipt of appellant's request for pre-hearing discovery and in finding that the arresting officer had reasonable suspicion to stop
appellant.


Discussion



Admission of Evidence


 In his first issue, Smith argues that the ALJ improperly admitted the Department's
evidence because the Department had violated the controlling discovery rule. We disagree.

 On July 1, 1998, Smith propounded a discovery request to the Department seeking
production of "copies of any nonprivileged documents or records contained in the [Department's]
file or possession prior to any hearing . . . ." On July 3, 1998, the Department responded that
the Department did not possess the requested documents and that it would supplement its response
when those documents came into its possession. On July 14, 1998, the Department produced
copies of the notice of hearing, the peace officer's sworn report, the DWI statutory warning, the
technical supervisor's affidavit, and the breath test results. At the hearing, Smith objected to the
admission of the documents based on his assertion of the Department's discovery violations. The
ALJ, on the record, twice offered Smith a continuance, which he refused.

 The relevant part of the rule reads:


The scope of prehearing discovery in these proceedings is as follows:


A defendant shall be allowed to review, inspect and obtain copies of any non-privileged documents or records contained in the department's file or possession
at any time prior to the hearing. If defendant submits a written request
accompanied by an amount sufficient to pay for copying charges, . . . the
department shall furnish copies of such documents or records to the defendant
within five days of receipt of the request. Any request for production of documents
or records not in the department's possession shall be denied by the Judge. Any
document or record that has not been made available by the department to the
defendant pursuant to request shall not be introduced into evidence by the
department.



1 Tex. Admin. Code § 159.13(1) (1999).

 This Court has recently interpreted the rule in question. See Texas Dep't of Pub.
Safety v. Zhao, No. 3-98-406-CV (Tex. App.--Austin June 4, 1999, no pet. h.). In Zhao, we
pointed out the statutory limitation on discovery that the records be in the Department's possession
at the time of the request. See Zhao, slip. op. at 6-7; Raesner v. Texas Dep't of Pub. Safety, 982
S.W.2d 131, 133 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). The rule in question
requires "any request for production of documents or records not in the department's possession"
be denied by the ALJ. 1 Tex. Admin. Code § 159.13(1) (1999) (emphasis added). "This implies,
and common sense dictates, that the Department is not required to produce documents that it does
not possess." Zhao, slip op. at 7. It would be nonsensical for the response period to begin (and
perhaps expire) at a time when the Department does not have a requested document in its
possession, particularly because a local law enforcement agency often prepares the relevant
documents and forwards them to the Department. Zhao, slip op. at 7. Such a construction would
harshly penalize the Department for events outside its control. Id.

 Although section 159.13(1) provides that documents in the possession of the
Department, but not produced within five days of a request, should be excluded from evidence,
it does not state that later-obtained evidence should also be excluded. See Zhao, slip op. at 8; 
Texas Dep't of Pub. Safety v. Monroe, 983 S.W.2d 52, 58 (Tex. App.--Houston [14th Dist.]
1998, no pet.). In Monroe, an ALJ admitted a document into evidence over the objection that it
had not been provided within five days of its request. The ALJ considered the production to be
within the five-day rule because the Department had submitted it to the accused on the day it
received the document. The court of appeals agreed. Id.; accord Zhao, slip op. at 8. As we held
in Zhao, we hold here that the Department may supplement an original production within the
period allowed by section 159.13(1) when it obtains documents not in its possession at the time
of the original production.

 In this case, the Department did not have the documents when Smith requested
them. It so answered the request within the five day period. It then forwarded the documents
within one to two days after receipt, falling within the rule of Zhao and Monroe concerning
supplementation. (2) We conclude the Department's evidence was properly admitted and overrule
issue one.


Probable Cause

 In an administrative license revocation, the Department must prove by a
preponderance of the evidence that reasonable suspicion to stop, or probable cause to arrest, the
person existed. See Transp. Code § 524.035(2). In his second issue, Smith contends that the ALJ
erred in finding that the Department met that burden. He contends that there was no showing that
Smith's roadside activities, although perhaps unusual, had the necessary relationship to a crime
to justify the initial stop.

 A police-citizen encounter may occur without probable cause to arrest or reasonable
suspicion to detain. A police officer may approach a citizen without probable cause or reasonable
suspicion to ask a citizen questions or even to request a search. See California v. Hodari D., 499
U. S. 621, 628 (1991); Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). As long
as the citizen remains free to disregard the questions and walk away there is no detention and no
intrusion upon the citizen's liberty or right of privacy implicating the Fourth Amendment. See
United States v. Mendenhall, 446 U. S. 544, 554 (1980); Hawkings v. State, 758 S.W.2d 255, 259
(Tex. Crim. App. 1988). 

 There is no bright-line rule to determine the validity of police intrusion into any
given situation. See Hulit v. State, 982 S.W.2d 431, 438 (Tex. Crim. App. 1998); Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The Fourth Amendment does not prohibit all
searches and seizures, but only those that are unreasonable. See Rhodes v. State, 945 S.W.2d 115,
117 (Tex. Crim. App. 1997). "Reasonableness" must be judged from the perspective of a
reasonable officer at the scene. Rhodes v. State, 945 S.W.2d at 118. Circumstances which raise
a suspicion that illegal conduct is taking place need not themselves be criminal. See Woods v.
State, 956 S.W.2d 33 (Tex. Crim. App. 1997).

 In Woods, the court of criminal appeals rejected the idea that if an activity was as
consistent with innocent activity as with criminal activity then reasonable suspicion could not exist. 
Woods, 956 S.W.2d at 38. Instead, "[t]he reasonableness of a temporary detention must be
examined in terms of the totality of the circumstances and will be justified when the detaining
officer has specific articulable facts, which taken together with rational inferences from those
facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged
in criminal activity." Id. All that is necessary to justify an initial contact is a showing that the
officer acted reasonably under the totality of the circumstances. See Hulit, 982 S.W.2d at 438.

 Whoolery saw a vehicle stopped at an intersection at three o'clock in the morning. 
There was no evidence of any reason, such as a stop sign or traffic light, for the vehicle to be
stopped. The vehicle had visible collision damage. A man and a woman were standing outside
the vehicle on the driver's side. The man appeared agitated. As the officer turned his car around
and came back to the intersection, the two quickly entered the car and drove away. Whoolery's
articulated reason for stopping the car was that he was concerned, in part because of the man's
agitation, that a disturbance in the nature of a breach of the peace was about to ensue. A breach
of the peace consists of any conduct that violates the public peace, order, or decorum, although
the offender may not actually commit an act of personal violence.

 We cannot say that Whoolery's actions were unreasonable when we view the totality
of the circumstances. There is no evidence that when Whoolery turned around, he did anything
to detain Smith, such as putting on flashing lights. At that point, Whoolery's actions were
consistent with an officer who was going to ask a question or offer assistance, i.e., engage in a
police-citizen encounter with no Fourth Amendment implications. Smith and the car's passenger
fled. That action, added to the other observed actions, created a reasonable suspicion that Smith's
actions had a link to criminal conduct and were not simply strange. 

 Once stopped, Whoolery noticed a smell of alcohol and Smith told the officer he
had been drinking earlier. At that point, Whoolery was not unreasonable in asking Smith to take
the field sobriety tests, to which Smith apparently consented. After Smith's poor performance on
those tests, Whoolery had probable cause for an arrest for driving while intoxicated.

 We conclude that the Department satisfied the statutory requirement of showing
reasonable suspicion and probable cause. We overrule issue two.


Conclusion



 We have concluded that the Department's evidence was properly admitted. We
have also concluded that the Department satisfied the requirement to show probable cause. 
Accordingly, we have overruled both issues presented and affirm the judgment of the county court
at law.




 


 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 12, 1999

Do Not Publish
1. No exact locations or directions were given; for example, we are not informed of the car's
exact relationship to the intersection.
2. The ALJ offered Smith a continuance, on the record, two times. Appellant refused the ALJ's
offered continuance. In Raesner v. Texas Department of Public Safety, 982 S.W.2d 131, 133
(Tex. App.--Houston [1st Dist.] 1998, no pet.), the court held that appellant's failure to request
a continuance meant that he could not complain on appeal that his substantial rights were
prejudiced.



termine the validity of police intrusion into any
given situation. See Hulit v. State, 982 S.W.2d 431, 438 (Tex. Crim. App. 1998); Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The Fourth Amendment does not prohibit all
searches and seizures, but only those that are unreasonable. See Rhodes v. State, 945 S.W.2d 115,
117 (Tex. Crim. App. 1997). "Reasonableness" must be judged from the perspective of a
reasonable officer at the scene. Rhodes v. State, 945 S.W.2d at 118. Circumstances which raise
a suspicion that illegal conduct is taking place need not themselves be criminal. See Woods v.
State, 956 S.W.2d 33 (Tex. Crim. App. 1997).

 In Woods, the court of criminal appeals rejected the idea that if an activity was as
consistent with innocent activity as with criminal activity then reasonable suspicion could not exist. 
Woods, 956 S.W.2d at 38. Instead, "[t]he reasonableness of a temporary detention must be
examined in terms of the totality of the circumstances and will be justified when the detaining
officer has specific articulable facts, which taken together with rational inferences from those
facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged
in criminal activity." Id. All that is necessary to justify an initial contact is a showing that the
officer acted reasonably under the totality of the circumstances. See Hulit, 982 S.W.2d at 438.

 Whoolery saw a vehicle stopped at an intersection at three o'clock in the morning. 
There was no evidence of any reason, such as a stop sign or traffic light, for the vehicle to be
stopped. The vehicle had visible collision damage. A man and a woman were standing outside
the vehicle on the driver's side. The man appeared agitated. As the officer turned his car around
and came back to the intersection, the two quickly entered the car and drove away. Whoolery's
articulated reason for stopping the car was that he was concerned, in part because of the man's
agitation, that a disturbance in the nature of a breach of the peace was about to ensue. A breach
of the peace consists of any conduct that violates the public peace, order, or decorum, although
the offender may not actually commit an act of personal violence.

 We cannot say that Whoolery's actions were unreasonable when we view the totality
of the circumstances. There is no evidence that when Whoolery turned around, he did anything
to detain Smith, such as putting on flashing lights. At that point, Whoolery's actions were
consistent with an officer who was going to ask a question or offer assistance, i.e., engage in a
police-citizen encounter with no Fourth Amendment implications. Smith and the car's passenger
fled. That action, added to the other observed actions, created a reasonable suspicion that Smith's
actions had a link to criminal conduct and were not simply strange. 

 Once stopped, Whoolery noticed a smell of alcohol and Smith told the officer he
had been drinking earlier. At that point, Whoolery was not unreasonable in asking Smith to take
the field sobriety tests, to which Smith apparently consented. After Smith's poor performance on
those tests, Whoolery had probable cause for an arrest for driving while intoxicated.

 We conclude that the Department satisfied the statutory requirement of showing
reasonable suspicion and probable cause. We overrule issue two.


Conclusion



 We have concluded that the Department's evidence was properly admitted. We
have also concluded that the Department satisfied the requirement to show probable cause. 
Accordingly, we have overruled both issues presented and affirm the judgment of the county court
at law.