NO. 07-00-0019-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 5, 2001


______________________________



JAMES EDWARD HOSE
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 292ND DISTRICT COURT OF DALLAS COUNTY;



NO.F98-69901-IV; HON. HENRY WADE, JR., PRESIDING


_______________________________


 

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

 James Edward Hose, appellant, appeals his conviction for theft of property. 
Through three points of error he challenges 1) the trial court's refusal to suppress evidence
allegedly obtained from an impermissible detention and 2) the legal and factual sufficiency
of the evidence underlying the jury's verdict. We overrule each point and affirm the
judgment. 

Point One - Suppression of Evidence


 Appellant contends that the trial court should have suppressed evidence obtained
by the police. This is allegedly so because "when the officer made contact with [him] there
was a 'stop' or temporary seizure for investigative detention," and the "initial detention" was
not supported by "[]sufficient articulable facts." We disagree. 

 Standard of Review

 The standard of review applicable to reviewing a court's refusal to grant a motion
to suppress is one of abused discretion. Benitez v. State, 5 S.W.3d 915, 918 (Tex.
App.-Amarillo 1999, pet. ref'd). Rather than describe this well-established standard, we
cite the parties to Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) for an
explanation of same.

 Similarly well-settled is the standard used in determining whether a police officer has
reasonable suspicion to conduct a temporary detention. That standard was recently
addressed in Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997), and we refer the
litigants to that opinion for an explanation of same. (1) 

 Application of Standard

 The officer who initially confronted appellant had been assigned to work, under
cover, in a "crime prevention theft and burglary and robbery prevention detail around the
parking lots that surround the State Fair" in Dallas. The day before actually confronting
appellant, the officer had seen appellant and others cruising, at night, through the parking
lots being patrolled. On the day of the confrontation, appellant was again seen at the
parking lots. This time, however, he was first seen afoot "flagging" cars into a lot. (2) Then
the officer, along with his colleague, saw appellant enter a vehicle with several other
individuals, drive to another lot, exit the vehicle, and resume "flagging" cars. The other
individuals with appellant also exited the car. But, rather than help with "flagging" down
vehicles, they proceeded to look inside the cars that had parked there before their arrival. 

 At least one of the officers at the scene knew that a city permit was needed to park
vehicles in these particular lots. So too did he know that no permits had been issued
authorizing anyone to park cars in the first lot at which appellant was seen that day. 

 Having witnessed the foregoing events, the officers called for assistance and
headed toward the lot wherein appellant was located. As they approached in their 
unmarked vehicle, appellant "flagged" them and asked for $5. At that point, the officers
stopped the vehicle. One exited, flashed his police badge and asked to see appellant's
identification and parking permit. In attempting to comply, appellant "produced from his
pocket a stack of cards." Atop the stack was a credit card. The officer could see the face
of the card and noted the name imprinted thereon was "Barbara." Upon "realiz[ing] that
[appellant] didn't look like somebody named Barbara, . . . [he] asked if that was
[appellant's] card." Appellant answered no and indicated that he obtained the item from
someone else. Thereafter, appellant produced from his back pocket a checkbook also
belonging to someone with the name "Barbara Frias." 

 The officer obtained the phone number of Ms. Frias from the checks and called
same. During their conversation, Barbara Frias told the officer that her purse had been 
stolen the previous day and imparted to the officer a description of the person who had
taken it. Upon concluding that the description imparted generally matched the appearance
of appellant, the latter was arrested. (3) 

 Police officers, like any one else, are free to approach individuals in a public place
and ask questions, so long as the person is free to leave. Barnes v. State, 870 S.W.2d 74,
77 (Tex. Crim. App. 1993). They need neither probable cause nor reasonable suspicion
to do so. Furthermore, identifying themselves as a peace officer (without more) does not
convert the consensual encounter into a detention, id., nor does simply asking the
individual for identification. Holladay v. State, 805 S.W.2d 464, 471 (Tex. Crim. App.
1991). This is so because, as long as the encounter is consensual, the individual is free
to respond, ignore the queries, or leave. Here, appellant was in a public place when one
of the officers approached him, identified himself as a policeman, and asked appellant for
identification and a parking permit. Nothing of record indicates that appellant could not
have ignored the questions or left. Moreover, in responding to the questions asked of him,
appellant disclosed the credit card and checkbook of Frias. 

 Given that appellant was standing in a public place, the officers did not need either
probable cause or reasonable suspicion to approach him and ask questions. And,
because nothing of record suggests that appellant was prevented from leaving or ignoring
the officer's questions, we cannot say that "when the officer made contact with [him] there
was a 'stop' or temporary seizure for investigative detention" which violated any statutory
or constitutional prohibition. Accordingly, the trial court did not abuse its discretion in
refusing to suppress any evidence. 

Point Two - Sufficiency of the Evidence


 Next appellant contends that the evidence is legally and factually insufficient to
support his conviction. This is allegedly so because the State failed to present sufficient
evidence establishing him as the one who committed the theft. We again disagree. 

 Standard of Review

 The standard of review applicable to questions of legal and factual sufficiency are
well-settled and need no explanation. We find it adequate to merely cite the parties to King
v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) and Clewis v. State, 922 S.W.2d 126 
(Tex. Crim. App. 1996).

 Application of Standard

 Through an indictment, the State accused appellant of unlawfully, knowingly and
intentionally exercising control over the purse and contents therein of Barbara Frias without
Ms. Frias' consent and with the intent to deprive Ms. Frias of the property. In support of
this allegation, we find the following evidence. First, when shown a photographic array of
potential suspects, Ms. Frias selected appellant's picture. Second, she also stated, at trial,
that appellant looked like the person who took her purse. Third, appellant possessed her
credit card and checkbook a day after the theft. Fourth, both the credit card and
checkbook were in her purse when it was taken. Combined, this constitutes some
evidence upon which a rational jury could find beyond reasonable doubt that appellant
committed the theft in question. And, while there may have been some discrepancies
between appellant's visage and the description of the culprit initially given by Ms. Frias, that
evidence merely created a fact issue for the jury to resolve. Neither it or any other
evidence rendered the verdict clearly wrong or manifestly unjust. Accordingly, we find the
evidence supporting the verdict both legally and factually sufficient.

 Accordingly, the judgment is affirmed.


 Brian Quinn

 Justice


Do not publish.

 
1. We do note, however, that the "as consistent with innocent activity as with criminal activity" construct
repeatedly mentioned by appellant was rejected as a "viable test for determining reasonable suspicion" in
Woods. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).
2. "Flagging" consists of waving an item (here, a red rag) to gain the attention of drivers and induce
those drivers to park in the lot.
3. According to the arresting officer, appellant was arrested for driving from one lot to another
without a seatbelt and for lacking a parking permit.



 story was credible. In fact, in response to questioning from
defense counsel, Bohannon testified he “wouldn’t have cared” and didn’t think it was
important to investigate whether someone had given Appellant permission to test drive the
vehicle because he believed Appellant was lying. However, when asked to place himself
in Appellant’s position, he conceded he would have been angry if no one had followed up
on the allegation.  
          Relying on Bruno v. State, 845 S.W.2d 910 (Tex.Crim.App. 1993), the State
maintains that the evidence that Appellant had permission to test drive the vehicle was
insufficient to entitle him to an instruction on mistake of fact. We distinguish Bruno. In
Bruno, the appellant claimed that the true owner of the vehicle gave him permission to use 
her vehicle. Although a defensive instruction on mistake of fact was given, the appellant
complained that doing so incorrectly placed the burden of proof on him. The Court of
Criminal Appeals found that the charge as given properly placed the burden on the State,
but went on to find that the instruction was not necessary in the first place because a
mistake of fact instruction was not proper when the issue was whether or not the true
owner did or did not give permission to operate the vehicle.
          We find the underlying facts to be closer to those in Gardner v. State, 780 S.W.2d
259 (Tex.Crim.App. 1989), which involved a third party whom the actor believed had
authority to give him consent to operate a vehicle. Id. at 260. The Court found that a
mistake of fact instruction was proper because the jury could have believed that both: (1)
the defendant believed that he had the consent of the third party to use the vehicle and (2)
that the true owner of the vehicle had not given him permission. Id. at 262-63. In Bruno,
the jury could not believe both the testimony of the true owner of the vehicle and the
testimony of the appellant as it could in Gardner. Bruno, 845 S.W.2d at 913. In Bruno, the
mistake of fact instruction was unnecessary because only one of the incompatible stories
could have been believed. Id.
          The State did not present any evidence that Appellant believed that the large
Hispanic male was the true owner of the Neon. As an auction attendee, Appellant could
have believed that a third party with authority to give consent to test drive the Neon had
done so. Land, Bohannon, and Appellant’s friend testified that Appellant claimed to have
been given permission to drive the Neon by a large Hispanic male. Thus, under Woodfox,
there was at least some evidence entitling Appellant to a defensive instruction on mistake
of fact because the jury could have believed that both (1) Appellant believed he had the
consent of a third party to drive the Neon and (2) the true owner of the vehicle had not
given him permission. We conclude the trial court erred in denying Appellant’s requested
instruction. Point of error one is sustained.
          Accordingly, the trial court’s judgment is reversed and the cause is remanded to the
trial court for further proceedings.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice 

Do not publish.