In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-336 CR


____________________



LYDIA GORE SOTO, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 4


Montgomery County, Texas


Trial Cause No. 06-214492






MEMORANDUM OPINION


 Appellant, Lydia Gore Soto, appeals a DWI conviction arguing that the trial court
erred in denying her motion to suppress in that no reasonable suspicion existed to support the
arresting officer's stop of the appellant's vehicle and that any evidence obtained subsequently
to the stop should have been suppressed by the trial court. We affirm the judgment.

PROCEDURAL AND FACTUAL BACKGROUND


 Appellant was charged with the offense of driving while intoxicated. On February 22,
2007, appellant filed a motion to suppress, which was denied by the trial court after a hearing
held on May 25, 2007. Following the trial court's denial of the motion to suppress, appellant
pled guilty and punishment was assessed at one year in the Montgomery County Jail probated
for fifteen months and a $500 fine. On May 25, 2007, appellant timely filed her notice of
appeal, which was certified by the trial judge.

 On December 24, 2005, at 7:54 p.m. a homeowner called 911 and reported that an
unknown vehicle was parked at the end of her driveway. The homeowner told the 911
dispatcher that the vehicle did not belong to a family member and that she could not tell if
anyone was in the vehicle because it was dark. The homeowner stated she was inside her
home alone with the doors locked. The homeowner stated that her granddaughter lived next
door in a trailer and was not at home, and that she was "concerned." The 911 dispatcher
responded that she would let an officer know. 

 A Montgomery County Sheriff's deputy was dispatched to the caller's address. The
deputy arrived at the residence at 8:13 p.m. When the deputy pulled into the driveway, a
person believed to be a family member, came outside and said the reported vehicle had just
left. The deputy saw the taillights of a pick up truck driving down the road and went to stop
the vehicle. When the deputy stopped appellant, appellant explained that she had just gotten
into an argument with her husband, left her house, and then pulled into the driveway. 
Appellant exhibited signs of intoxication and was subsequently arrested.



BURDEN OF PROOF AND STANDARD OF REVIEW


 The Court of Criminal Appeals set forth the burden of proof in a reasonable suspicion
case as follows:

 To suppress evidence on an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct. A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant. Once the
defendant has made this showing, the burden of proof shifts to the State where
it is required to establish that the search or seizure was conducted pursuant to
a warrant or was reasonable. 


Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (footnotes omitted). In
evaluating a trial court's reasonable suspicion determination, we use a bifurcated standard
of review. Id. at 493. We give almost total deference to the trial court's determination of
historical facts but review de novo the trial court's application of the law to the facts not
turning on credibility and demeanor. Id. "Because the trial court did not make explicit
findings of fact in this case, we review the evidence in the light most favorable to the trial
court's ruling and assume that the trial court made implicit findings of fact supported by the
record." Id.

REASONABLE SUSPICION


 "[A] police officer can stop and briefly detain a person for investigative purposes if
the officer has reasonable suspicion . . . that criminal activity '"may be afoot[.] . . .'" Woods
v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (quoting Terry v. Ohio, 392 U.S. 1, 30, 
88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)); see also Bobo v. State, 843 S.W.2d 572, 574
(Tex. Crim. App. 1992). The Court must be able to point to specific articulable facts which,
taken together with rational inferences from those facts, reasonably warrant the detention. 
Woods, 956 S.W.2d at 35. "'[T]hese facts must amount to something more than an inchoate
and unparticularized suspicion or hunch.'" Id. (quoting Terry, 392 U.S. at 21, 88 S.Ct. at
1880). The United States Supreme Court elaborated on the standard stating:

 [T]he totality of the circumstances-the whole picture-must be taken into
account. Based upon that whole picture the detaining officers must have a
particularized and objective basis for suspecting the particular person stopped
of criminal activity.


 . . . The analysis proceeds with various objective observations,
information from police reports, if such are available, and consideration of
modes or patterns of operation of certain kinds of lawbreakers. From these
data, a trained officer draws inferences and makes deductions-inferences and
deductions that might well elude an untrained person. 


United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)
(citations omitted). The standard "does not deal with hard certainties, but with
probabilities." Id.

 We are not to consider individual circumstances in isolation. The United States
Supreme Court has explained that individual factors '"quite consistent with innocent travel'"
may collectively amount to reasonable suspicion. See United States v. Arvizu, 534 U.S. 266,
274-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting United States v. Sokolow, 490 U.S.
1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Moreover, "'[t]he possibility of an innocent
explanation does not deprive the officer of the capacity to entertain reasonable suspicion of
criminal conduct.'" Woods, 956 S.W.2d at 37 (quoting In re Tony C., 21 Cal.3d 888, 148
Cal. Rptr. 366, 582 P.2d 957, 960-61 (1978)). '"[T]he relevant inquiry is not whether [the]
. . . conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to . . . types of
noncriminal acts.'" Sokolow, 490 U.S. at 10 (quoting Illinois v. Gates, 462 U.S. 213, 243-44
n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The primary function of the officer's
detention "'is to resolve that very ambiguity and establish whether the activity is in fact legal
or illegal[.]'" Woods, 956 S.W.2d at 37 (quoting In re Tony C., 582 P.2d at 960-61); see also
Curtis v. State, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

ANALYSIS


 Here the established facts show that on Christmas Eve, appellant parked her vehicle
at night, with the lights out, without explanation, in a private driveway. The homeowner,
who was home alone, knew the vehicle did not belong to anyone in her family and was
concerned. Her granddaughter lived next door and was not at home. The homeowner could
not see inside the vehicle because it was dark. She did not know if the driver remained in the
vehicle. She called 911. The car remained parked in her driveway for nearly half an hour. 
When the deputy arrived at the residence, a person (believe to be a family member) met the
deputy in the driveway. This individual was also concerned. The individual told the deputy
that the vehicle had just left. The deputy could still see the vehicle's taillights. The deputy
stopped the vehicle a quarter of a mile from the residence. 

 The trial court listened to the 911 tape and heard testimony from several witnesses,
including the deputy. The deputy testified that the basis for the stop was to investigate the
suspicious vehicle. He understood that the caller did not know what the driver of the vehicle
was doing, what the person intended, or what he or she had done, stating that "[the caller]
thought it was suspicious and wanted to get some help." He testified that based on his
experience and training it was his duty to find out if the person in the vehicle had a reason
to be there, what the reason was, and if any criminal activity was going on. He testified that
the area in which the vehicle was reported was a high crime area. He also described the tone
of the family member he spoke with in the driveway as "hysterical." We must consider
rational inferences from the facts and the deputy's twenty-four years of experience. See
Curtis v. State, 238 S.W.3d at 380. Considering the totality of the circumstances, we find
that the facts established by the record, when combined with the rational inferences from
those facts, reasonably warrant the investigatory stop. The judgment is affirmed. 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on January 31, 2008

Opinion Delivered November 12, 2008

Do not publish


Before Gaultney, Kreger, and Horton, JJ.