**Opinion filed May 22, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00125-CR

_____

## LAURA KATHRYN BENSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th Judicial District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6495**

### M E M O R A N D U M   O P I N I O N

The jury convicted Laura Kathryn Benson of the offense of unlawful use of a criminal instrument.[1]  The jury assessed her punishment at confinement for two years in the State Jail Division of the Texas Department of Criminal Justice and

---

[1]*See* TEX. PENAL CODE ANN. § 16.01 (West Supp. 2013).

imposed a fine of $10,000. In a single issue, Appellant challenges the trial court's denial of her motion to suppress. We affirm.

*Background Facts*

At the hearing on the motion to suppress, Deputy Greg Hearn of the Haskell County Sheriff's Department testified that he was involved in an investigation regarding an anhydrous ammonia tank that was stored in an old gin yard near his house in Rochester. Deputy Hearn had been monitoring the anhydrous tank for a couple of months after officers in the Sheriff's Department had noticed evidence of tampering and possible theft of anhydrous ammonia from the tank. Anhydrous ammonia is commonly used as an agent in the manufacture of methamphetamine. Around 4:00 a.m. on the night in question, Deputy Hearn was awakened by "a lot of racket." Deputy Hearn heard dogs barking and the sound of a vehicle with loud mufflers. Deputy Hearn got up, got dressed in his uniform, and set out in his patrol vehicle in the direction of the anhydrous tank. Deputy Hearn turned off his street and looked down the road at the tank. Deputy Hearn did not see anyone or any suspicious activity near the tank, and he continued down the road past a storage facility. Deputy Hearn saw a pickup parked behind the storage facility that was facing toward the anhydrous tank, which was less than a block away. The vehicle's lights were off and its cab was not illuminated, but Deputy Hearn could see that there were people inside it. As Deputy Hearn drove by the storage facility and the pickup, the pickup's lights turned on and it pulled away in the opposite direction of Deputy Hearn's patrol car. Deputy Hearn made a U-turn and conducted an investigatory stop on the pickup. As Deputy Hearn walked toward the pickup, he immediately saw tanks lying in the bed. The tanks appeared to be adapted to hold something other than what they were supposed to hold. After seeing the tanks in the back of the pickup, Deputy Hearn walked over to the anhydrous tank and saw a propane tank attached to it with a rubber tube. The

2

propane tank was in the process of being filled with anhydrous ammonia. Deputy Hearn went back to the pickup and arrested both of its occupants, including Appellant, who was the driver.

Deputy Hearn testified that he decided to stop the pickup that Appellant was driving based on its suspicious location in the storage facility parking lot, its physical proximity to the anhydrous tank, the time of the day, and the fact that the pickup did not leave the storage facility until Appellant saw him drive by in the patrol car. Deputy Hearn stated that it is "almost unheard of" to encounter a blacked-out vehicle at 4:00 a.m. in Rochester. Although Deputy Hearn stated that he initially woke up after hearing a vehicle with loud mufflers, he determined that the pickup he stopped did not have loud mufflers or exhaust. Moreover, Deputy Hearn denied observing Appellant committing any traffic violations.

Haskell County Sheriff David Halliburton testified that he had ordered Deputy Hearn to monitor the anhydrous tank in the old gin yard that was located about a block from Deputy Hearn's house in Rochester. According to Sheriff Halliburton, police had been watching the anhydrous tank because apparent theft and suspicious activity had occurred there in the past.

At the conclusion of the hearing, the trial court denied Appellant's motion to suppress.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Id.* at 922–23. First, we afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Id.* at 922–23. Second, we review de novo the trial court's determination of pure questions of law and mixed

3

questions of law and fact that do not depend on credibility determinations. *Id.* at 923.

*Analysis*

Appellant contends that the trial court erred when it denied her motion to suppress the evidence obtained as a result of the traffic stop because Deputy Hearn lacked reasonable suspicion to justify the initial stop of Appellant's vehicle. Accordingly, we direct our analysis to a review of Deputy Hearn's basis for stopping the vehicle that Appellant was driving.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with reasonable inferences from those facts, would lead him to reasonably conclude that a person is, has been, or soon will be engaging in criminal activity. *Derichsweiler*, 348 S.W.3d at 914. This is an objective standard that disregards the subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

The facts invoked to justify an investigative detention must support more than a mere hunch or good faith intuition that criminal activity is afoot. *Derichsweiler*, 348 S.W.3d at 916. To support a finding of reasonable suspicion, the specific facts articulated by the detaining officer must show some unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez*, 348 S.W.3d at 923. However, there is no requirement that the officer suspect that a particular offense is being committed; it is enough if the facts suggest that something of an apparently criminal nature is brewing. *Derichsweiler*, 348 S.W.3d at 916–17.

At the outset, we note that Texas Courts of Appeals have analyzed similar facts to determine whether a police officer had sufficient grounds to initiate a traffic stop, and they have arrived at differing results. For example, in *Tanner v. State*, 228 S.W.3d 852 (Tex. App.—Austin 2007, no pet.), the Austin Court of Appeals affirmed the trial court's denial of a motion to suppress, holding that an officer had reasonable suspicion to justify a traffic stop of an individual walking away from a dark area behind a business that was closed for the night. By contrast, in *Klare v. State*, 76 S.W.3d 68 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd), the Houston Court of Appeals reversed the trial court's denial of a motion to suppress the results of a traffic stop that was initiated after an officer saw a vehicle parked behind a strip shopping center at 2:30 a.m. The officer in *Klare* testified that he initiated the stop based on the time of day that he saw the vehicle, the proximity of the parked vehicle to a closed business, and a history of burglaries in the area. *Id.* at 71. The *Klare* court determined that these factors focused on the suspect's surroundings rather than the suspect himself and that, therefore, an additional fact or facts particular to the suspect's behavior was necessary to support a finding of reasonable suspicion. *Id.* at 75.

5

This court, however, has previously addressed this apparent dichotomy. *Hernandez v. State*, No. 11-08-00136-CR, 2009 WL 4931594 (Tex. App.—Eastland Dec. 17, 2009, no pet.) (mem. op., not designated for publication). In *Hernandez*, we criticized the *Klare* holding when we stated that the reasonable suspicion analysis should not focus on each factor observed by the officer on an isolated, piecemeal basis. *Id.* at *2–3. Rather, the analysis requires us to review the totality of the circumstances to assess whether an officer is justified in making an investigative stop. *Id.* In addition to the vehicle's suspicious location and time of day, we emphasized the fact that the vehicle in *Hernandez* drove away from its parked position when the officer drove past it. *Id.* at *3; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion). In light of all of these factors that gave rise to the officer's suspicion, we affirmed the trial court's denial of the appellant's motion to suppress. *Hernandez*, 2009 WL 4931594, at *3.

*Hernandez* is controlling in this case. The facts that gave rise to Deputy Hearn's suspicion are nearly identical to those of the officer in *Hernandez*. Deputy Hearn observed a vehicle parked with its lights out in close proximity to an area that had been monitored by police due to previous criminal activity. The vehicle was parked in the early hours of the morning—a time when any vehicular activity was highly unusual. Moreover, the vehicle was facing the anhydrous tank that Deputy Hearn was monitoring, and the vehicle drove away from its parked position when Deputy Hearn drove past it. Based on our review of the evidence, we conclude that the totality of the circumstances gave rise to a reasonable suspicion that criminal activity was afoot when Deputy Hearn decided to stop the vehicle that Appellant was driving. Appellant has failed to persuade us to stray from our previous holding in *Hernandez*. We acknowledge that the time of day and the level of criminal activity in an area are not suspicious "in and of themselves."

6

*Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010). However, here, there were additional circumstances to raise Deputy Hearn's suspicion that Appellant was, had been, or soon would be engaging in criminal activity at the time of the traffic stop. Thus, we conclude that Deputy Hearn had reasonable suspicion to initiate the stop of the vehicle and to detain Appellant for investigative purposes.[2] The trial court did not err when it denied Appellant's motion to suppress. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


May 22, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

[2]We have previously addressed the same issue of whether Deputy Hearn had the requisite reasonable suspicion to initiate the stop of this vehicle as it related to the passenger in the vehicle that Appellant was driving, and we reached the same conclusion. *See Boyd v. State*, Nos. 11-12-00251-CR & 11-12-00252-CR, 2013 WL 4428923, at *3-4 (Tex. App.—Eastland Aug. 15, 2013, pet. ref'd).