*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★        ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00411-CR

Edmanuel **JUAREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No.1, Bexar County, Texas
Trial Court No. 257511
Honorable Al Alonso, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:         Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed: February 3, 2010

AFFIRMED

Edmanuel Juarez pled no contest to possession of marijuana and was sentenced in accordance with a plea bargain agreement. On appeal, Juarez challenges the trial court's denial of his motion to suppress asserting: (1) no reasonable suspicion supported his initial detention; and (2) he was not provided with the requisite *Miranda*[1] warnings before making a statement regarding marijuana being

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

located in the console of his car. Juarez also contends the State engaged in prosecutorial vindictiveness by offering a plea bargain containing a much greater punishment if Juarez elected to appeal the trial court's ruling on the motion to suppress. We affirm the trial court's judgment.

## MOTION TO SUPPRESS

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. When, as here, the trial court makes no findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the record supports the trial court's implicit fact findings. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law to those facts. *State v. Dixon*, 206 S.W.3d at 590.

A.      Reasonable Suspicion to Detain

In his first point of error, Juarez contends that the officers did not have reasonable suspicion to support his detention. Specifically, Juarez asserts, "The lack of indicia of reliability from an anonymous informant coupled with Appellant's activities did not create reasonable suspicion."

The United States Supreme Court has long held that an officer has the right to briefly detain and investigate a person when the officer has a reasonable suspicion that the person is involved in criminal activity. *State v. Sheppard*, 271 S.W.3d 281, 287 (Tex. Crim. App. 2008). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually

is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. A reasonable suspicion determination is made by considering the totality of the circumstances. *Id*. at 492-93.

In reviewing the trial court's ruling under the applicable abuse of discretion standard in this case, we note the Texas Court of Criminal Appeals has expressly rejected the "as consistent with innocent activity as with criminal activity" construct for evaluating a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 378 (Tex. Crim. App. 2007); *Woods v. State*, 956 S.W.2d 33, 36-37 (Tex. Crim. App. 1997). Quoting the explanation given by the California court which subsequently repudiated the construct it had initially created, the Texas Court of Criminal Appeals asserted, "if circumstances are 'consistent with criminal activity,' they permit – even demand – an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.'" *Woods v. State*, 956 S.W.2d at 36-37 (quoting *In re Tony C.*, 582 P.2d 957, 960-61 (Cal. 1978)). The court also agreed with Chief Justice Rehnquist's observation that "the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts." *Woods*, 956 S.W.2d at 38 (citing *U.S. v. Sokolow*, 490 U.S. 1, 10 (1989)). The court observed, "We recognize that there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion." *Woods*, 956 S.W.2d at 38.

Two witnesses testified at the hearing on the motion to suppress. Deputy Miguel Gonzales, a seventeen-year veteran with the Bexar County Sheriff's Office, testified that he was off duty

working security at an apartment complex. The manager of the complex, who Deputy Gonzales had met on several occasions and who some officers had known for several years, met in the parking lot with Deputy Gonzales and two other off-duty officers who also were working security at the apartment complex. The manager pointed the officers toward one of the breezeways of one of the apartment buildings and informed them that several tenants had complained about smelling burnt marijuana.[2] The officers began surveillance of the breezeway.

Juarez arrived and parked away from the building under surveillance. Juarez exited his vehicle, looked toward the breezeway, ran to the opposite side, and went up the stairs and inside an apartment that was located in the breezeway the officers had under surveillance. Juarez exited the apartment thirty seconds later and walked quickly to his vehicle. Based on his experience, Deputy Gonzales testified that Juarez's actions were suspicious because he parked in the farthest parking space from the apartment despite closer parking spaces being available close to the stairway, and the amount of time Juarez spent inside the apartment made Deputy Gonzales suspect Juarez was engaged in either a narcotics drop-off or pick-up.

Luis Cerda, an associate manager at the restaurant where Juarez worked, testified that he directed Juarez to pick up a wrist wallet from another employee who had left work without turning in the wallet. Juarez was directed to go to the same apartment complex where Deputy Gonzales was conducting the surveillance. Juarez never returned to work, and Cerda was subsequently informed that Juarez had been arrested.

---

[2] During cross-examination, Deputy Gonzales was asked whether the information he received was that there was a smell of marijuana in two possible breezeways. Deputy Gonzales responded "[i]t was in one of the breezeways." The prosecutor again asked, "One breezeway?" Deputy Gonzales responded, "Yes, ma'am."

Reasonable suspicion may be supplied by information an officer acquires from another person if the information is reasonably corroborated by the officer. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Garcia v. State*, 296 S.W.3d 180, 185 (Tex. App.—Houston [14th Dist.] 2009, no pet. h.); *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd). Corroboration refers to whether the officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified. *Brother*, 166 S.W.3d at 259 n.5; *Turley v. State*, 242 S.W.3d 178, 181 (Tex. App.—Fort Worth 2007, no pet.). Where the reliability of information is increased, less corroboration is necessary. *Turley*, 242 S.W.3d at 181.

The reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her. *Brother*, 166 S.W.3d at 258. The circumstances surrounding information provided by a citizen-informant range from a completely anonymous phone call to a face-to-face informant who is willing to be held accountable for the information provided. *State v. Griffey*, 241 S.W.3d at 704. Information is more reliable when it is provided face-to-face by a person who puts herself in a position to be held accountable for her intervention. *Garcia*, 296 S.W.3d at 185; *Turley*, 242 S.W.3d at 181.

Contrary to Juarez's contention, the information in this case was not an anonymous tip, but was information provided face-to-face by the apartment manager. Although the apartment manager did not have firsthand knowledge regarding the marijuana smell, the tenants providing the information were known to her, and the information was relayed to her in her capacity as the apartment manager. Under these circumstances, the reliability of the information is increased because the trial judge could reasonably infer that tenants do not routinely make false complaints to

their apartment manager regarding the odor of marijuana. Moreover, the trial judge could reasonably infer that an apartment manager would act promptly with regard to complaints from several tenants so that the complaints were recent. Based on his experience, his observations of Juarez's actions, and the information relayed to him, Deputy Gonzales testified that Juarez's actions were consistent with a narcotics drop-off or pick-up. *See Woods*, 956 S.W.2d at 37-38 (quoting Chief Justice Burger's assertion in *U.S. v. Cortez*, 449 U.S. 411, 418 (1981) that "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person . . . ."). Deferring to the trial court's determination of historical facts and the reasonable inferences that could be drawn therefrom, we hold that the trial court did not abuse its discretion in concluding that the officers had reasonable suspicion to temporarily detain Juarez.

B.     Temporary Detention or Arrest

In his second point of error, Juarez asserts that his statement regarding the location of the marijuana in the console of his vehicle was made as a result of custodial interrogation. Deputy Gonzales testified that he and the two other officers were in uniform in an unmarked vehicle while they conducted their surveillance. After observing Juarez's actions, Deputy Gonzales stopped the unmarked vehicle directly behind Juarez's vehicle. Deputy Gonzales exited his vehicle and approached the driver's side door of Juarez's vehicle. Deputy Gonzales asked Juarez if he lived at the complex. Juarez was very nervous and replied no. Deputy Gonzales asked Juarez if he had any handguns, contraband, or illegal drugs. Juarez responded that he had some marijuana in his pants pocket. Deputy Gonzales asked Juarez to exit the vehicle and placed restraints on him for officer safety. Deputy Gonzales told Juarez that he was not under arrest, but was being detained. After

patting Juarez down for weapons, Deputy Gonzales asked Juarez where the marijuana was. Juarez stated that the marijuana was in his pants pocket. After Deputy Gonzales patted Juarez's pockets and did not feel any marijuana, he told Juarez that he did not feel anything. Juarez then stated that the marijuana was in the console of the car. Deputy Gonzales recovered the marijuana from the console and placed Juarez under arrest.

Juarez contends that his "detention turned into an arrest when [he] replied affirmatively to the Deputy's question as to whether he had drugs in his possession and the Deputy demanded that he exit the car and placed him in handcuffs." As a result of the custodial interrogation, Juarez contends that the evidence of the marijuana should be suppressed.

Assuming for purposes of this opinion that Juarez's statement regarding the marijuana being located in the console was obtained in violation of *Miranda*, we agree with the State that Juarez's contention that evidence of the marijuana must be suppressed as a result is erroneous. "The 'fruit of the poisonous tree' . . . does not apply to mere violations of the prophylactic requirements in *Miranda*: while the statement taken in violation of *Miranda* must be suppressed, other evidence subsequently obtained as a result of that statement (i.e. the 'fruits' of the statement) need not be suppressed." *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997); *see also State v. Foster*, No. 05-08-01302-CR, 2009 WL 2414485, at *10 (Tex. App.—Dallas Aug. 7, 2009, no pet. h.) (not designated for publication). "[M]ere noncompliance with *Miranda* does not result in a carryover taint beyond the statement itself." *Baker*, 956 S.W.2d at 23.[3]

---

[3] During oral argument before this court, Juarez's attorney appeared to suggest that this court apply the rule in *Wong Sun* that requires suppressing the fruits of a defendant's statement when the statement was obtained through actual coercion. *See Baker*, 956 S.W.2d at 22 (citing *Wong Sun v. U.S.*, 371 U.S. 471 (1963)). This rule would apply only if Juarez's statements were not made voluntarily but resulted from coercion. *See State v. Foster*, 2009 WL 2414485, at *11. Having reviewed the record, however, we are persuaded that Juarez's statements relating to his possession of marijuana were not coerced. *See id*.

Juarez's first and second points of error are overruled.

## PROSECUTORIAL VINDICTIVENESS

In his third point of error, Juarez asserts his due process rights were violated when the State engaged in prosecutorial vindictiveness by bargaining for a much greater punishment if Juarez exercised his right to appeal the denial of the motion to suppress after he pled guilty. The State responds that Juarez failed to preserve this complaint for appeal.

We initially question whether Juarez has the right to raise this complaint on appeal under Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure. The trial court's certification in this case acknowledges that Juarez's case is a plea bargain case but matters were raised by written motion filed and ruled on before trial. TEX. R. APP. P. 25.2(a)(2). Although this allows Juarez to appeal the denial of the motion to suppress, Juarez did not file any written pre-trial motion alleging prosecutorial vindictiveness or obtain a ruling thereon. Accordingly, Rule 25.2(a)(2) precludes Juarez from raising this complaint on appeal. *Id.*; *see also Calderon v. State*, No. 08-08-00258-CR, 2009 WL 1945647, at *1 (Tex. App.—El Paso July 8, 2009, no pet.) (noting appellate court lacked jurisdiction to address issues that were not cognizable under Rule 25.2(a)(2)) (not designated for publication).

In addition, we agree with the State that Juarez failed to preserve his complaint for appeal. At a hearing on a motion to reconsider the trial court's denial of the motion to suppress, the prosecutor made reference to the two plea deals; however, defense counsel never raised any due process objection. Because Juarez never made his due process claim in the trial court, the court was never given the opportunity to either hear evidence or rule on it. *Neal v. State*, 150 S.W.3d 169, 178

(Tex. Crim. App. 2004).  Accordingly, Juarez failed to preserve this complaint for appellate review. *Id.* at 180; *McGarity v. State*, No. 04-05-00600-CR, 2006 WL 3611719, at *2 (Tex. App.—San Antonio Dec. 13, 2006, pet. ref'd) (holding prosecutorial vindictiveness claim not preserved where issue was never raised in trial court) (not designated for publication).

Juarez's third point of error is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH