

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00498-CR

Melvin Masese **AYAKO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Criminal Court No. 4, Tarrant County, Texas
Trial Court No. 1260781
The Honorable Deborah Nekhom, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:   February 13, 2013

AFFIRMED

Melvin Masese Ayako appeals from the trial court's denial of his motion to suppress in this Class A misdemeanor DWI prosecution. We affirm.

### BACKGROUND

Ayako was arrested and charged by information with the offense of driving while intoxicated, with an enhancement for misdemeanor repetition, after a police officer observed Ayako's vehicle narrowly avoid colliding with a construction vehicle in a highway construction zone during the early morning hours of October 19, 2011. *See* TEX. PENAL CODE ANN.

§§ 49.04(a), 49.09(a) (West Supp. 2012).  Ayako filed a pre-trial motion to suppress alleging the officer lacked reasonable suspicion to stop his vehicle.  After an evidentiary hearing, the trial court denied the motion to suppress.  Ayako then pled guilty to the charged offense and was sentenced to 365 days' confinement in jail plus a $1,250 fine.  Ayako's sentence was suspended, and he was placed on community supervision for a term of two years.  The trial court certified Ayako's right to appeal the denial of his motion to suppress.  *See* TEX. R. APP. P. 25.2(a)(2)(A).  Ayako now appeals.

ANALYSIS

### Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.  *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).  Because the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, we afford almost total deference to the court's determination of historical facts—as long as the fact findings are supported by the record.  *Id.*; *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We apply the same deferential standard when reviewing the court's ruling on "mixed questions of law and fact" if resolution of those issues turns on an evaluation of credibility.  *Amador*, 221 S.W.3d at 673.  The trial court's application of the law of search and seizure to the facts of the case is reviewed de novo.  *Weaver*, 349 S.W.3d at 525; *Valtierra*, 310 S.W.3d at 447.  Where, as here, the trial court does not make explicit findings of fact and conclusions of law, we will sustain the court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case."  *Weaver*, 349 S.W.3d at 525 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App.

2006)); *Valtierra*, 310 S.W.3d at 447 (appellate court assumes trial court made implicit findings of fact that support its ruling as long as they are supported by the record).

An officer may conduct a brief investigative detention, or *Terry* stop, when he has reasonable suspicion to believe that the person is involved in criminal activity. *Ornelas v. United States*, 517 U.S. 690, 693 (1996); *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion exists when the officer has specific articulable facts that, combined with the rational inferences from those facts, lead him reasonably to conclude that the person is, has been, or soon will be engaged in criminal activity. *Balentine*, 71 S.W.3d at 768; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). This is an objective standard that disregards the actual subjective intent of the officer and, instead, looks to the totality of the circumstances and focuses on whether there was an objectively justifiable basis for the detention. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). While the "circumstances may all seem innocent enough in isolation, . . . if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.* (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).

*Application*

The evidence presented at the suppression hearing consisted of the testimony of Haltom City Police Officer Josh Oliver and North Richland Hills Police Officer Casey Zamora, along with a DVD recording from Zamora's patrol car and a diagram of the area. Officer Oliver testified that on October 19, 2011 he was working an overnight off-duty job with Bluebonnet Construction Company. Oliver was responsible for diverting traffic from the closed outside lane to the open inside lane due to a construction project near the 6900 block of Northeast Loop 820,

a major highway in Fort Worth. Oliver stated the outside lane's closure was marked by traffic barrels and cones, and there were signs warning drivers of the construction zone. His marked patrol vehicle was located at the rear of the construction zone with its emergency lights flashing to alert approaching vehicles to slow down due to the construction on the highway. Oliver testified that when his emergency lights are flashing on his parked patrol car, other drivers are legally required either to slow down to 20 miles per hour below the posted speed limit or to vacate the lane closest to his patrol vehicle by changing lanes. *See* TEX. TRANSP. CODE ANN. § 545.157(a) (West Supp. 2012). In this instance, Oliver stated there was no other open lane.

Oliver testified that, at approximately 1:54 a.m., the rear-most construction vehicle pulled out from the closed outside lane and turned into the open inside lane—no other vehicles were approaching the construction zone at the time. Oliver then observed a vehicle "traveling [at] a high rate of speed coming in the inside lane approaching the construction vehicle" from behind. Oliver testified the posted speed limit for that stretch of highway is 60 miles per hour, and stated his opinion that the approaching vehicle was traveling "well in excess of 60 miles an hour." *See* TEX. TRANSP. CODE ANN. § 545.352 (West Supp. 2012) (defining speeding). Oliver conceded that he did not use radar or pace the vehicle against other traffic to measure its speed, but explained that he works Loop 820 almost every night and is familiar with "what 60 miles an hour appears like and what 40 miles an hour appears like." The vehicle came up on the construction vehicle in such a manner that the driver had to "slam on its brakes abruptly causing its tires to squeal" and "swerve[] to avoid hitting that construction vehicle." Oliver stated the vehicle narrowly missed colliding with the construction vehicle and came "probably within a foot" of the construction vehicle before it stopped. The construction vehicle continued moving, while the other vehicle remained stopped in the highway lane for approximately five seconds before slowly proceeding forward. Officer Oliver stated that the driver's slamming on the brakes and

then halting in the middle of the roadway "caught his attention," causing him to believe that either an accident had in fact occurred or the driver might be impaired and did not know what to do. At that point, Officer Oliver pulled up behind the vehicle in his patrol car and initiated a stop. Upon making contact with Ayako, the vehicle's driver, Oliver suspected he was intoxicated. Oliver then contacted the North Richland Hills Police Department for assistance in making the arrest because the location was within its jurisdiction. Oliver testified he relayed all of the relevant information concerning his stop of Ayako's vehicle and his suspicion that Ayako was intoxicated to North Richland Hills Officer Zamora, who subsequently arrested Ayako for driving while intoxicated.

Officer Zamora testified that he recorded his conversation with Officer Oliver, and the DVD recording of the officers' conversation was admitted into evidence and played for the court. In his testimony after the recording was played, Zamora summarized Oliver's observations preceding the stop as follows: "He said he was working off duty on the construction site, which is the roadway, and a vehicle was approaching the construction vehicle and slammed on its brakes and swerved, stopped in the roadway, and then after a little bit continued on. And that's when he got behind him and initiated the traffic stop." Zamora stated that Oliver did not inform him that Ayako had committed a traffic violation. Zamora also stated that he had previously testified at the ALR hearing that he (Zamora) did not believe there was a traffic violation prior to Oliver's stop, and that in his opinion none of the driving behavior that Oliver described to him constituted a traffic violation. Zamora agreed that speeding is a traffic violation. Zamora testified he did not personally observe Ayako while he was driving.

At the conclusion of the hearing, the trial court stated that it is not necessary for an officer to pace a vehicle or use radar in order to know that the vehicle is speeding, and concluded that "what Officer Oliver saw did give him reasonable suspicion to pull over Mr. Ayako." The court

made clear that it disregarded Zamora's testimony about the lack of a traffic violation, stating, "just because Officer Zamora doesn't know that speeding is a traffic violation doesn't mean it's not a traffic violation, and just because the ALR judge didn't know that doesn't mean it's not so."

On appeal, Ayako argues that Officer Oliver's testimony was too conclusory and failed to identify "specific, articulable facts" to support a finding of reasonable suspicion to detain him. Ayako stresses the absence of certain facts in Oliver's testimony, pointing out that the officer did not say Ayako knocked over any traffic cones or barrels marking off the closed lane, acknowledged that Ayako avoided a collision with the slow-moving construction vehicle, acknowledged that Ayako did not obstruct any other traffic while he was briefly stopped on the highway, and conceded that he did not use radar or pacing to measure the speed of Ayako's vehicle. In support, Ayako relies on *Ford v. State* in which the court held a state trooper's testimony that he saw the defendant committing a traffic violation by following another car "too close" in his vehicle was too conclusory because the trooper merely stated an opinion based on his training, and wholly failed to provide any objective facts to support the opinion; therefore, the officer's testimony did not satisfy the State's obligation to show specific articulable facts that, combined with rational inferences, constituted reasonable suspicion. *See Ford v. State*, 158 S.W.3d 488, 493–94 (Tex. Crim. App. 2005) (record failed to reveal any objective facts giving rise to reasonable suspicion). The instant case is distinguishable from *Ford*. Here, Officer Oliver did not testify in a conclusory manner by merely stating his opinion that Ayako was committing an offense by "speeding" or "driving while intoxicated," but, rather, articulated specific, objective facts based on his personal observations of Ayako's driving behavior which, along with rational inferences flowing from those facts, created a reasonable suspicion that Ayako was engaged in criminal activity by speeding or driving while intoxicated, or both. The

combination of the officer's observations that (i) Ayako was driving "well in excess of" the posted speed limit of 60 miles per hour, i.e., speeding, (ii) in a well-marked construction zone under circumstances that required him to reduce his speed to 40 miles per hour, which he failed to do, (iii) in a manner that caused him to have to abruptly slam on his brakes and swerve to avoid hitting a construction truck, and (iv) he remained stationary in the highway lane after the near-collision, (v) which events occurred at approximately 2:00 a.m. when the bars typically close, along with rational inferences from those objective facts, sufficed to establish reasonable suspicion for the investigative stop of Ayako.

Ayako asserts that Oliver's testimony that he was speeding was not entitled to any weight because Oliver did not objectively measure Ayako's speed with radar or pacing; he also points out that Zamora testified there was no traffic violation. A law enforcement officer's training and experience are factors that can be considered in a reasonable suspicion analysis. *See id.* at 494. Oliver testified that based on his training and experience, including his nightly experience working that stretch of highway under construction, he is able to visually recognize when a vehicle is speeding and to decipher the difference between a vehicle traveling 60 miles per hour versus 40 miles per hour through the construction zone. The trial court, as the sole judge of the witnesses' credibility and the weight to be given to their testimony, was entitled to give more weight to Officer Oliver's testimony that he observed Ayako speeding than to Officer Zamora's testimony that Oliver did not inform him that Ayako committed any traffic violation. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Oliver's opinion that Ayako was speeding was supported by specific, objective facts based on Oliver's personal observations, and was not merely conclusory. *See Ford*, 158 S.W.3d at 493-94. Ayako also challenges Oliver's testimony because Oliver did not video the events preceding the stop or write a report. Those complaints

relate to Oliver's credibility, and, as noted, the trial court was the sole judge of the credibility of and weight to be given to Oliver's testimony. *Ross*, 32 S.W.3d at 855.

Finally, Ayako argues that some of his driving behavior, such as swerving to avoid a collision and remaining stopped for a brief period afterward, was innocent conduct that does not support reasonable suspicion. Ayako argues, for example, that he could have remained stopped for five seconds after the near-collision because he was shaken up, rather than because he was intoxicated. While some of the behavior observed by Officer Oliver may seem innocent enough in isolation, as noted *supra* we do not view the facts in isolation of each other, but consider the totality of the circumstances to determine whether they combine to create a reasonable suspicion of criminal conduct. *Derichsweiler*, 348 S.W.3d at 914, 916–17 (defendant's non-criminal, but bizarre, conduct in repeatedly pulling his car alongside other vehicles in a commercial parking lot, and then staring and grinning at the passengers, gave rise to reasonable suspicion to stop defendant); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (at suppression hearing, it is not necessary that the State establish that defendant committed a crime prior to the investigatory stop, but it must produce testimony showing sufficient facts to prove a reasonable suspicion existed that defendant had engaged in, or soon would be engaged in, criminal activity). As noted, the totality of the circumstances, viewed in the light favorable to the trial court's ruling, show that at approximately 2:00 a.m. Ayako was driving in excess of the posted speed limit when he came up behind a construction truck and had to slam on his brakes and swerve in order to avoid a collision; these facts and their rational inferences viewed together support a reasonable suspicion that Ayako was speeding and possibly driving while intoxicated. *Valtierra*, 310 S.W.3d at 447 (appellate court assumes trial court made implicit findings of fact that support its ruling as long as they are supported by the record).

We conclude that the totality of the circumstances contained in the record satisfy the State's burden to prove that Ayako's warrantless investigative detention was supported by reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 913; *Ford*, 158 S.W.3d at 492 (once the fact of a warrantless detention is established, burden shifts to State to establish reasonable suspicion to justify the detention). Accordingly, we overrule Ayako's issue on appeal, and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH