

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0239-22

### ANDREW SHIRLEY JR., Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS HARRIS COUNTY

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, WALKER, SLAUGHTER and MCCLURE, JJ., joined. KEEL, J., filed a concurring opinion in which KELLER, P.J., joined.

The question before this Court is whether the trial court properly adjudicated Appellant guilty for possession of a controlled substance and revoked his community supervision after Appellant violated the

conditions of his deferred adjudication community supervision when he fled from the police. To answer that question, we have to consider whether the State established by a preponderance of the evidence that Appellant had committed the new law violation of evading detention. To answer that question, we must decide whether the State proved by a preponderance of the evidence that the officer who attempted to pull Appellant over for driving with an expired vehicle registration was lawfully attempting to detain Appellant when Appellant refused to stop. The answer to all these questions is yes.

In June of 2020, Appellant was serving deferred adjudication community supervision for the offense of possession of a controlled substance. One evening, police officers with the Houston Police Department attempted to stop Appellant for driving a vehicle with an expired temporary license plate.[1] Appellant briefly evaded detention before crashing his vehicle and fleeing on foot. The State relied upon this new offense of evading arrest and detention to move to adjudicate Appellant's guilt and revoke his community supervision.[2] Appellant

---

[1] *See* Tex. Transp. Code Ann. §§ 502.407(a), 502.473(a).

[2] Tex. Penal Code § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting to lawfully arrest or detain him.").

argues the trial court should not have revoked his community supervision because the attempted traffic stop was unlawful. According to Appellant, the Governor had suspended registration requirements pursuant to his authority under the Texas Disaster Act as part of the State's effort to combat the COVID-19 disaster at the time Appellant committed the offense of evading detention.[3]

But Appellant skips a step. Appellant was not adjudicated based upon his commission of the traffic offenses of driving with an expired vehicle registration or failing to display a valid vehicle registration insignia. So, the question is not whether the Governor effectively suspended registration requirements or whether he had the authority to do so. Rather, the question is whether the officer had reasonable suspicion at the time of the attempted stop to temporarily detain Appellant for suspicion of committing a traffic offense. Based on the record before this Court, the officer's belief that Appellant had violated the law was based on specific articulable facts and the attempt to stop Appellant was justified by reasonable suspicion. The Governor's authority to suspend statutes pursuant to the Disaster Act did not render the officer's conduct unreasonable when he attempted to detain

---

[3] *See* Tex. Gov't Code § 418.016(a).

Appellant in light of the uncertainty regarding the requirements necessary for the Governor to exercise that authority. Therefore, we affirm the court of appeals' holding that the trial court did not abuse its discretion in adjudicating Appellant's guilt and revoking his community supervision.

## Background

Back in 2019, Appellant pleaded guilty to the offense of possession of a controlled substance enhanced by two prior convictions. Pursuant to a plea bargain, the trial court placed Appellant on deferred adjudication community supervision for a term of three years.[4] In July of 2020, the State filed a motion to adjudicate Appellant's guilt alleging he violated the terms of his community supervision by committing the new offense of evading arrest or detention.[5] The trial court held a hearing on the State's motion to adjudicate and Appellant pleaded not true to this allegation.[6]

---

[4] Tex. Health & Safety Code Ann. § 481.115.

[5] Tex. Penal Code 38.04(a).

[6] The State's Motion to Adjudicate also contained allegations Appellant violated his community supervision by committing the offense of possession with intent to deliver and by testing positive for illegal substances while under supervision but the State abandoned these allegations at the hearing.

At the hearing on the motion to adjudicate, the trial court heard from the two Houston Police Department officers primarily involved in the traffic stop. Officer Michael Falcone, a plain-clothes officer who was parked in a gas station conducting surveillance unrelated to Appellant, saw Appellant driving a car with an expired temporary license plate. He also observed Appellant turn out of the parking lot without signaling. Officer Falcone contacted marked patrol units in the area to alert them.

Officer Christopher Pham responded and attempted to pull Appellant over for having an expired temporary license plate and failing to signal.[7] Appellant refused to pull over. Appellant evaded Officer Pham until Appellant crashed his car. Appellant then fled on foot. Officer Pham chased, and later detained Appellant after Appellant fell to the ground.

On cross-examination, Officer Pham specified that Appellant's temporary tag expired on May 27, 2020, and the traffic stop occurred on June 29, 2020. Officer Pham testified he was not sure whether the Department of Public Safety had waived renewal requirements because of the COVID-19 pandemic. However, he testified he was familiar with

---

[7] The State conceded on appeal that failing to signal while exiting a private driveway is not a valid basis for a traffic stop citing *State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App. – Fort Worth 2004, pet. ref'd).

an announcement that DPS would begin requiring tag renewals on April 1, 2021. There was no testimony establishing when DPS initially suspended the renewal requirements. The following was the extent of Officer Pham's testimony on this topic:

Q: Okay. And this temporary tag expired May 27, 2020?

A: I believe so, yes.

Q: Okay. And this – the date of this offense was June 29, 2020, correct?

A: Correct.

Q: And all of this was taking place during the midst of the coronavirus pandemic; is that right?

A: Correct.

Q: Now, it's my understanding, Officer Pham, that – that during the pandemic, the Texas – the DPS has waived renewal of the tags because of the virus; is that right?

A: I'm not sure, sir. I'm not sure of the specifics.

Q: Okay. So would it become – would it be a surprise to you that there have been announcements that the DPS – or the – yes, the DPS is going to start requiring tag renewals and everything starting April 1st? Does that sound familiar to you?

A: Yes.

Q: So if they're going to start requiring tag renewals on April 1st of this year, it would make sense they were not requiring tag renewals back in June of last year, correct?

A: I'm not sure.

After Officer Pham's testimony, the State rested.

Appellant called Officer Falcone to attempt to address the status of Appellant's vehicle registration. On that topic, Officer Falcone provided the following testimony:

> Q: Okay. Now, I want to ask you about this whole business with expired tags currently with – during the whole COVID pandemic. Is your department stopping people for expired tags during the pandemic given that the DPS has restrictions because of COVID?
>
> A: Yes. We continued to stop people for expired registration.
>
> Q: And is that something that you personally have done, is stop people for expired registration?
>
> A: I'm in a plainclothes capacity, but I do call out expired registration.
>
> Q: Okay. Do you know if your department was stopping people for expired registrations in June of 2020?
>
> A: Yes, sir.
>
> Q: Do you know if your department was issuing tickets in June of 2020 for expired . . . registrations in June of 2020?
>
> A: I don't know if they were issuing tickets, sir. I'm in a plainclothes capacity, so I do not do that.
>
> Q: Okay. Officer, did you relay any kind of traffic violation to other officers involving [Appellant]?
>
> A: Yes. I relayed information to marked units on our unit.
>
> Q: And what was that information?

A: I relayed the paper tag, the vehicle number, and a violation while exiting the parking lot onto Richmond.

With that testimony, the defense rested, and both sides closed.

Regarding the suspension of vehicle registration requirements, the record only shows that Officer Pham agreed that it "sounded familiar" that DPS planned to begin requiring temporary tag renewals on April 1, 2021. The record does not establish that the Governor had suspended the temporary tag renewal requirement, how he did so, or when the suspension would have taken effect.

Appellant argued to the trial court that the traffic stop underlying the offense of evading arrest was not supported by probable cause stating:

> Judge, in terms of whether or not there was a violation of a condition, I would reurge [sic] our arguments that there was not probable cause to issue a traffic stop in the first place. Given the evading arrest, the State must prove that the arrest was lawful to begin with. The only testimony that we have is that – when they initiated the stop, was that [Appellant] had an expired tag, which during the time of COVID, as Officer Pham testified to, the DPS is just now starting to reenforce those provisions because they have been suspended during COVID, which would have been at the time that this arrest took place.

When the trial court inquired of counsel why he was referring to DPS policy, as opposed to Houston Police Department Policy, counsel responded:

> So, judge, because of COVID restrictions, the closure of –
> and I think this is general public knowledge – the closure of
> public facilities such as the DPS facilities that the renewal of
> license tags and licenses have been . . . postponed given
> COVID and that, as Officer Pham testified to, that they have
> been instructed as of April this year, people will have to have
> renewed their licenses and registrations. So the inference is
> that at that time back in June when this happened that a tag
> – an expired tag on a car would not have been sufficient to
> make the stop.

The State argued that it had established the offense of evading arrest by a preponderance of the evidence.  In response to the defense's argument about COVID restrictions, the State noted Officer Falcone's testimony that the Houston Police Department was still stopping people for expired registrations and Appellant's vehicle had an expired registration, which supported the traffic stop.  Based upon these facts, the State argued that Appellant's deferred adjudication supervision should be revoked.

The trial court concluded the State met their burden to establish Appellant committed the offense of evading arrest or detention.  As to the lawfulness of the attempted detention, the court concluded Officer Pham had "at the bare minimum a right to temporarily detain [Appellant] to investigate the issue as it relates to the violation – what appeared to be a violation of the traffic laws as it relates to an expired registration."  The trial court noted Officer Falcone's testimony that the

Houston Police Department was still issuing tickets for expired registration and found Officer Pham had a right to temporarily detain Appellant to investigate this violation. The trial court found Appellant had violated the terms of his community supervision by committing the offense of evading detention and adjudicated Appellant guilty of possession of a controlled substance before sentencing him to nine years confinement. Appellant filed a notice of appeal.

## Appeal

On appeal, Appellant argued that the trial court erred because the State failed to prove the element of an attempted lawful detention necessary to establish the offense of evading arrest or detention. Appellant argued that by order of the Governor via a press release, and pursuant to his power under the Disaster Act, vehicle registration laws had been suspended in March of 2020.[8] According to Appellant, because there was no offense for driving with an expired registration in June of 2020, the traffic stop was not supported by reasonable suspicion of criminal activity. Appellant acknowledged that an objectively reasonable mistake regarding the scope of a statute can give rise to

---

[8] Tex. Gov't Code § 418.016(a).

reasonable suspicion.[9]   However, Appellant argued that there was nothing ambiguous or unclear about the Governor's press release, so a reasonably well-informed police officer would have been aware of the suspension of the registration requirement and ignorance of the same would not be objectively reasonable.

The State argued that even assuming the Governor had the authority to suspend the relevant transportation code provisions, the Governor's press release was not effective to suspend the provisions. The State argued that the press release would have to be in writing and filed with the Secretary of State to be a legally binding proclamation, order, or regulation, under the Disaster Act.  Further, the State argued that the officer's attempted enforcement of the vehicle registration statute was objectively reasonable given the uncertainty regarding the law in this area.

In reply, Appellant argued that the suspension of laws provision of the Disaster Act has no requirement of an executive order, proclamation, or any filing.[10]   According to Appellant, only the declaration of a state of disaster, the termination of a state of disaster,

---

[9] *See Heien v. North Carolina*, 574 U.S. 54, 67-68 (2014).

[10] Tex. Gov't Code § 418.016(a).

and the establishment of an emergency management council require a filed executive order or proclamation.[11]   Appellant noted several examples of the Governor's use of a press release to announce various suspensions and waivers during the pandemic arguing a reasonably well-informed police officer would be familiar with these measures.[12]

The court of appeals affirmed the trial court concluding that the officers "reasonably believed a violation was in progress."[13]  The court held the State established, by a preponderance of the evidence, that Appellant committed the offense of evading arrest or detention, and the trial court did not abuse its discretion in concluding that the traffic stop was supported by reasonable suspicion.[14]  The court outlined Officer Pham and Officer Falcone's testimony concluding:

---

[11] *See* Tex. Gov't Code § 418.014(a) ("The governor by executive order or proclamation may declare a state of disaster if the governor finds a disaster has occurred or that the occurrence or threat of disaster is imminent."); *but see* Tex. Gov't Code § 418.012 ("Under this chapter, the governor may issue executive orders, proclamations, and regulations and amend or rescind them. Executive orders, proclamations, and regulations have the force and effect of law.").

[12] In support of his arguments on appeal, Appellant cited to an OAG opinion letter, numerous press releases on unrelated topics, press coverage concerning the press releases, and information from the Texas Department of Motor Vehicles website. None of these factual assertions were contained in the record on appeal. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal.").

[13] *Shirley v. State*, No. 09-21-00119-CR, 2022 WL 1096425, at *5 (Tex. App. – Beaumont April 13, 2022) (mem. op., not designated for publication).

[14] *Id.*

The testimony of Officers Pham and Falcone constitutes evidence "that some activity out of the ordinary ha[d] occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity [was] related to [a] crime." The officers' testimony reflects that they "reasonably believed a violation was in progress." Viewing the evidence in the light most favorable to the trial court's judgment, we conclude that the trial court did not abuse its discretion in concluding that there was reasonable suspicion for the traffic stop. Additionally, the defendant did not challenge at trial that he failed to stop and that he evaded arrest. We conclude that the State proved by a preponderance of the evidence that [Appellant] committed the offense of evading arrest or detention. The trial court did not abuse its discretion in adjudicating [Appellant's] guilt.[15]

The court of appeals also noted that Appellant did not argue to the trial court that the Governor's press release suspended or changed the law.[16] Rather, before the trial court, Appellant only argued that DPS had suspended the enforcement of expired tags. Because Appellant's argument on appeal did not comport with his argument to the trial court, the court of appeals restricted its analysis to whether the traffic stop

---

[15] *Id.* (internal citations omitted).

[16] *Id.* at *3, n. 6 ("Here, the appellate record does not reflect that [Appellant] argued to the trial court that the Governor's press release resulted in a suspension or change in the law. Rather, [he] only argued to the trial court that DPS has suspended enforcement of expired tags. The trial court overruled that objection and found that the traffic stop was a lawful detention. An Appellant's argument to the trial court must comport with his argument on appeal. We restrict our analysis to whether the traffic stop was supported by reasonable suspicion.") (internal citations omitted).

was supported by reasonable suspicion.[17]  The court of appeals affirmed

the trial court's judgment.[18]

## Petition for Discretionary Review

Appellant filed a petition for discretionary review raising the following

issues:

> 1.     Can police lawfully detain someone for violating a law that is suspended by the governor under the Texas Disaster Act?
>
> 2.     Is the governor required to issue an executive order and file it with the secretary of state in order to invoke the suspension-of-laws provision of the Texas Disaster Act?

We granted Appellant's petition.  To ensure that our analysis would

not be unduly limited by Appellant's framing of the issue, we also

granted the following issue on our own motion:

> Did the Texas Disaster Act, Texas Government Code § 418.016(a), authorize the Governor to suspend Texas Transportation Code §§ 502.407 & 502.473?

Ultimately, however, we need only answer the first issue.[19]  We

need not address the remaining issues because we hold that Officer

Pham could lawfully attempt to stop Appellant for either driving with an

---

[17] *Id.*

[18] *Id*. at *5.

[19] *See, e.g., Abbott v. Harris County*, ___S.W.3d___, 2023 WL 4278763, at *11 (Tex. June 30, 2023) (declining to consider the meaning or constitutionality of Section 418.016(a)'s suspension-of-statutes authority because of the significant constitutional issues raised by the provision and instead resting its decision on other grounds).

expired vehicle registration or failing to display a valid vehicle registration insignia under the facts presented in this case. At the time of the stop, Appellant's conduct established a violation of a criminal statute. Further, the law regarding the steps necessary for the Governor to exercise his authority to suspend statutes pursuant to the Disaster Act was not clear at the time of the stop. Given that lack of clarity, the officer's decision to stop was reasonable even assuming the Disaster Act authorized the Governor to suspend the statutes at issue in this case.

## Standard of Review

A trial court's decision to adjudicate guilt is reviewed under an abuse of discretion standard.[20] A finding of a single violation of community supervision is sufficient to support revocation.[21] An order revoking probation must be supported by a preponderance of the evidence meaning the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision.[22]

---

[20] Tex. Code Crim. Proc. Ann. art. 42A.108(b) ("The determination to proceed with an adjudication of guilt on the original charge is reviewable in the same manner as a revocation hearing . . . in a case in which the adjudication of guilt was not deferred); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) ("Appellate review of an order revoking probation is limited to abuse of the trial court's discretion.").

[21] *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

[22] *Rickels*, 202 S.W.3d at 763-64 (citing *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Cr. App. 1974)).

In reviewing the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling.[23] The trial judge is the sole trier of facts, arbiter of the credibility of witnesses, and the weight to be given to the evidence presented.[24] We are required to uphold the trial court's judgment on any applicable theory of law raised by the evidence.[25]

As mentioned above, we must consider whether the State proved by a preponderance of the evidence that Appellant committed the offense of evading detention. To answer that question, we must consider whether Officer Pham had reasonable suspicion to detain Appellant for the perceived offenses of operation of vehicle with an expired plate and failure to display a valid vehicle registration insignia. Based on the record in this case, we believe the officer did have reasonable suspicion to lawfully detain Appellant at the time Appellant fled.

### Reasonable Suspicion and Evading Detention

---

[23] *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979); *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

[24] *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980).

[25] *Martell v. State*, 663 S.W.3d 667, 672 (Tex. Crim. App. 2022) (noting appellate court must apply the "right ruling, wrong reason" doctrine to uphold a trial court's ruling adjudicating guilt on any legal theory applicable to the case).

A person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him."[26]  Finding Appellant committed this offense, "requires proof that an attempted arrest or detention is lawful at the time the person flees."[27]  The validity of the attempted detention, at the moment of flight, is an element of the offense.[28]  To establish whether an attempted detention is lawful, the State must prove that the attempted detention was based upon reasonable suspicion.[29]

The standard for determining whether reasonable suspicion exists for a temporary investigative detention is quite low.  It is lower than the probable cause standard and applies only to those brief detentions which fall short of being full scale searches and seizures.[30]  A police officer has

---

[26] Tex. Penal Code § 38.04(a).

[27] *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020) (holding that exclusionary rule principles do not apply to the offense of evading arrest or detention, instead finding the issue should be litigated as an element of the State's case).

[28] *Id*. at 129-30.

[29] *Day*, 614 S.W.3d at 127 ("The text of the [evading] statute is plain: it requires proof that an attempted arrest or detention is lawful at the time the person flees."); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (a police officer may lawfully detain the driver of a vehicle for a brief investigatory traffic stop so long as the officer has reasonable suspicion to do so.).

[30] *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).

reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity.[31]  The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts.[32]

Indeed, reasonable suspicion does not depend on the "most likely explanation" for a suspect's conduct reasonable suspicion can exist even if the conduct is "as consistent with innocent activity as with criminal activity."[33]  The State does not have to establish with certainty that a crime occurred; it just must show, under a totality of the circumstances, that the seizure was reasonable.[34]  The question is whether the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate.[35]

---

[31] *Derichsweiler*, 348 S.W.3d at 914.

[32] *Id.*

[33] *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Woods*, 956 S.W.2d at 38.

[34] *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).

[35] *Davis v. State*, 947 S.W.2d 240, 242-43 (Tex. Crim. App. 1997) (citing *Terry v. Ohio*, 392, U.S. 1, 21-22 (1968) ("the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant that intrusion.")).

As the court of appeals explained below, there must be articulable facts showing that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the activity is related to crime.[36] The State is not required to show an actual violation, but only that the officer reasonably believed a violation was in progress.[37] Additionally, an officer's detention may still be considered "reasonable" even if he is mistaken about the scope of a legal prohibition so long as that mistake is objectively reasonable.[38] This standard only requires law enforcement to have a reasonable knowledge of what the law prohibits, not to anticipate how a reviewing court might interpret that law in the future.[39]

A mistake about a statute's application can be objectively reasonable when the statute's application is unclear and the statute has not previously been definitively construed by a court.[40] In *Heien v. North Carolina*, the United States Supreme Court upheld a detention in

---

[36] *Shirley*, 2022 WL 1096425, at *4 (citing *Derichsweiler* 348 S.W.3d at 916).

[37] *Shirley*, 2022 WL 1096425, at *4.

[38] *Heien*, 574 U.S. at 60.

[39] *Id.* 67-68 (traffic stop was reasonable, as was any mistake of law by the officer, even though reviewing court later concluded the traffic statute at issue did not cover the defendant's conduct).

[40] *Id*. at 67-68.

which law enforcement stopped a vehicle with only one working brake light, apparently in violation of North Carolina law.[41] The Supreme Court affirmed the denial of the motion to suppress, concluding that it was objectively reasonable for the officer to suspect that the conduct was illegal, and that no Fourth Amendment violation had taken place because the statute at issue was unclear and had not previously been construed by a court.[42] The Court reasoned that there was reasonable suspicion justifying the stop because the officer's mistake concerning his understanding of the law was reasonable.[43]

## Analysis

Appellant has never disputed that he was driving with an expired temporary license plate. A person commits a traffic offense by operating a vehicle on a public highway with an expired license plate.[44] He also commits an offense for operating a vehicle on a public highway without a valid vehicle registration insignia.[45] As the court of appeals explained below, Officer Pham and Officer Falcone testified to facts that some

---

[41] *Id.* at 57-59.

[42] *Id.* at 66-68.

[43] *Id.*

[44] Tex. Transp. Code Ann. § 502.473.

[45] Tex. Transp. Code Ann. § 502.473.

activity out of the ordinary occurred; that suggested a connection between Appellant and unusual activity; and that the unusual activity was related to a crime.[46]  Officer Pham testified that he attempted to stop Appellant in part because Appellant's vehicle's temporary license tag had expired.[47]  Officer Falcone testified that the Houston Police Department was still stopping motorists for expired registration at the time of the stop even though Officer Pham was unsure about whether DPS had suspended enforcement of the registration renewal requirement.[48]  On this record, we find it easy to agree with the court of appeals' conclusion that the officers reasonably believed a violation of a presumptively valid statute was in progress and the trial court did not abuse its discretion.[49]

While Appellant couches his argument in terms of the Governor's authority under the Disaster Act, the record in this case does not

---

[46] *Shirley*, 2022 WL 1096425, at *5.

[47] *Id*.

[48] *Id.; see Whren v. United States*, 517 U.S. 806, 815 (1996) (noting that police enforcement practices may vary from place to place but that search and seizure protections do not turn on such trivialities).

[49]  *Shirley*, 2022 WL 1096425, at *5; *see Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (accepting the unconstitutionality of an ordinance but upholding the validity of an arrest pursuant to the ordinance noting "there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance.").

sufficiently establish if or when the Governor officially suspended the relevant Transportation Code provisions. On appeal, he relies upon a March 16, 2020 press release. In that press release, the Governor announced, pursuant to his previous Disaster Declaration,[50] that he was suspending certain vehicle registration and title requirements, including Transportation Code Section 502.407, which makes it an offense to operate a vehicle with an expired license plate and Section 502.473, which makes it an offense to operate a vehicle on a public highway without proper registration.[51] There was nothing in the record before the trial court concerning the Governor's press release or his prior Disaster Declaration.[52]

Further, there is uncertainty regarding the requirements necessary for the Governor to exercise his authority under the Disaster Act. Section 418.016 of the Texas Disaster Act provides, in part, that "[t]he governor may suspend the provisions of any regulatory statute

---

[50] The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2095 (2020); *see* Tex. Gov't Code Ann. § 418.014 ("The governor by executive order or proclamation may declare a state of disaster if the governor finds a disaster has occurred or that the occurrence or threat of disaster is imminent.").

[51] *See Governor Abbot Waives Certain Vehicle Registration, Titling, and Parking Placard Regulations in Texas*, Office of the Texas Governor (March 16, 2020) ("https://gov.tex.gov/news/post/governor-titling-and-parking-placard-regulations-in-texas").

[52] *Shirley*, 2022 WL 1096425, at *3, n. 6.

prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster."[53]  The State notes that the statute granting the authority (even assuming that authority would authorize the statutory and rule suspensions in this case) is silent regarding how that authority is to be exercised.  According to Appellant, the lack of a specific statutory requirement that the Governor issue an executive order means a mere press release is sufficient.

But the State counters that looking at the Disaster Act as a whole, a formal proclamation filed with the Secretary of the State is required because Section 418.012 of the Disaster Act contains a provision authorizing the Governor to issue executive orders and proclamations to carry out his authority granted under the Act.[54]  Further, according to the State, a formal proclamation filed with the Secretary of State is necessary to allow the proclamation to occupy a position comparable to laws regularly passed by the Legislature.[55]  Even if we were to assume

---

[53] Tex. Gov't Code § 418.016(a).

[54] Tex. Gov't Code § 418.012.

[55] *See Williams v. State*, 146 Tex. Crim. 430, 441 (1943); *see also* Tex. Const. art. IV, § 21 ("There shall be a Secretary of State . . . He shall authenticate the publication of the laws, and keep a fair register of all official acts and proceedings of the Governor, and shall, when required, lay the same and all papers, minutes and vouchers relative thereto, before the

that Officers Pham and Falcone should have been aware of but were mistaken regarding the suspension of the vehicle registration requirements, such a mistake was objectively reasonable given the lack of clarity surrounding the statutes at issue.[56]

## Conclusion

The trial court did not abuse its discretion by concluding that Appellant committed the offense of evading arrest or detention thereby violating the conditions of his community supervision.  The attempt to detain Appellant was lawful because reasonable suspicion justified the attempted traffic stop.  Likewise, any possible mistake about whether operating a vehicle with an expired license plate constituted an offense in June of 2020 was objectively reasonable.  The judgment of the court of appeals is affirmed.

Delivered: August 23, 2023

Do Not Publish

---

Legislature, or other House thereof, and shall perform such other duties as may be required of him by law.”).

[56] *Heien,* 574 U.S. at 60.